Reichner v. P. Blakiston's Son & Co. et al., Appellants.

Argued September 25, 1934.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*George H. Detweiler,* for appellants.

*Herbert L. Floum,* and with him *Joseph L. Fox,* for appellee.

OPINION BY CUNNINGHAM, J., December 18, 1934:

The present controversy in this workmen's compensation case had its origin in the filing with the board by claimant, on June 21, 1932, of a petition to "review" (as provided in Section 413 of the amendatory Workmen's Compensation Act of June 26, 1919, P. L. 642, 661, and its amendment of April 13, 1927, P. L. 186, 194) a certain compensation agreement executed by him and his employer on January 17, 1931, and duly approved by the board.

The description therein of the accident and injury upon which it was based reads: "Slipped on stairway within building. Right leg injured below the knee." Claimant testified he was employed as a relief night watchman and while ascending a dark stairway in the performance of his duty on the night of December 28, 1930, struck his right shin against the edge of a step.

Under the terms of this open agreement compensation was paid, under Section 306 (a), for total disability until claimant returned to work on March 23, 1931, having executed a final receipt under date of March 20th, thereby terminating the agreement.

The ground for review set out in the petition of June 21, 1932, reads: "Claimant was still disabled at the time he signed the final receipt dated March 23, [20] 1931, and as there was a mistake as to the facts at that time, claimant desires to have the said final receipt set aside. And in support of the above allegations I state the following facts: claimant is totally disabled, unable to work and believes he is entitled to further compensation, and therefore asks to have the compensation agreement reopened."

In the answer of the employer and its insurance carrier it was pleaded that the petition had not been filed within the period of one year after the last payment of compensation under the agreement, as required by the amendment of 1927, supra, to the second paragraph of Section 413, and it was further averred that any disability from which claimant was then suffering was "not in any way associated" with the accident upon which the agreement was based.

Under a number of our more recent decisions, of which Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731, is an example, the board could not entertain the petition under the first paragraph of Section 413, because, in a case of this kind, that paragraph applies only to existing agreements, and this agreement had been terminated by the final receipt. We are here dealing with an "open" agreement for compensation for total disability under Section 306 (a) and not with one for a definite period under Section 306 (c) for the loss of a member. See Kitchen v. Miller Bros. Co., 115 Pa. Superior Ct. 141, 174 A. 919.

Nor could the petition be entertained under the second paragraph of Section 413 (as, in effect, a petition for reinstatement of a terminated agreement) upon the ground of a change in claimant's physical condition, in the nature of a recurrence of disability, because it was not filed within one year after the last payment of compensation under the agreement.

In accordance, however, with our frequently expressed policy of declining to hold claimants in compensation cases to strict rules of pleading, we shall consider the petition of this claimant as an application, under Section 434, to set aside his final receipt; it was so treated by the referee and board and by the court below.

That section provides that a final receipt may be set aside "at any time" upon proof that it was procured

by fraud, coercion, or other improper conduct of a party, or founded upon mistake of law or fact; i. e., at any time within the limitations, of 300 weeks for partial and 500 weeks for total disability, prescribed by the statute: Zupicick v. P. & R. C. & I. Co., supra.

As stated, the allegation in the petition is that the receipt was founded upon a mistake of fact. Obviously, the mistake contemplated by the statute must be one which occurred at the time the receipt was executed. There was testimony that after executing the receipt and resuming his employment on March 23, 1931, claimant worked continuously until January 5, 1932, when, in his own language, he "had a heart attack" which disabled him for two weeks; then, with the exception of one additional week, he worked at his usual employment until March 14, 1932, when he became disabled from a "severe attack of myocarditis."

The ground upon which the compensation authorities set aside the final receipt and ordered the resumption, as of March 14, 1932, of payments under the agreement was set forth in the following finding of fact as made by the referee and adopted by the board: "The referee finds as a fact that at the time the claimant executed the final receipt he did so in ignorance of the fact that the infection from the injured foot did affect and would thereafter affect and continue to affect and aggravate a weakened heart condition known as myocarditis from which he was suffering at the time."

Upon appeal to it, the court below, deeming the evidence sufficient to support the finding, entered judgment upon the order of the board, and we now have this appeal by the employer and its insurance carrier from that judgment.

When we turn to the performance of our duty to examine the record for the purpose of ascertaining

whether it contains sufficient legally competent evidence to support the controlling finding of the compensation authorities, our difficulty is that we are unable to find any evidence sustaining a finding that claimant was suffering from any weakened or abnormal heart condition at the time he signed his final receipt. In fact, the evidence is all to the contrary. Claimant, upon resuming his usual employment in March, 1931, worked continuously until January, 1932, a period of nine months. His only reference to any physical discomfort was that "off and on" beginning "around July [1931]" he had "a kind of pain and burning" starting in his foot and working up to the point of the injury to his leg.

Insofar as the medical testimony is concerned, it should be noted that there were two hearings before the referee. At the first, claimant was not represented by counsel and did not have his physicians, Doctors Hartman and Shapiro, present, but presented a certificate from Dr. Hartman, dated July 30, 1932, and one from Dr. Shapiro, dated in August, 1932, in each of which it was certified that claimant's then disability was due to "advanced myocarditis." Dr. Hartman, claimant's family physician, stated in his certificate that he felt an infection from claimant's injured leg had contributed largely to the myocarditis. It was agreed by counsel for appellants that these physicians, if present, would testify to the opinions expressed in their respective certificates.

The referee decided that there had "not been sufficient convincing testimony offered him to induce him to believe that [claimant's] condition of heart disease is traceable to the injury to his right leg," and accordingly dismissed the petition. Upon claimant's appeal to the board, the record was remanded to the referee "with directions to procure the attendance of, and add

to the record direct testimony from, the two doctors,'' etc.

At the subsequent hearing before the referee claimant was represented by counsel and Dr. Shapiro was examined and cross-examined; additional testimony was also elicited from claimant. At the conclusion of this hearing claimant's counsel stated upon the record that he waived the privilege of having the hearing continued until the attendance of Dr. Hartman could be procured, requested permission ''to rest on the testimony of Dr. Shapiro,'' and stated that he would not call Dr. Hartman.

Dr. Shapiro testified that he had no personal knowledge of claimant's condition when the final receipt was executed; that he first saw him in September, 1931, at his office and found, upon examination, that ''he then had the beginning signs of myocarditis.'' He further testified that he lost track of claimant until he was called to his residence on March 14, 1932, and that he then attended him daily until April 18th, a period of five weeks, during which claimant was so ill with myocarditis that the witness ''considered him to be on his deathbed.'' It is therefore apparent from claimant's own testimony that there was no recurrence of pain or disability of any kind after he returned to work on March 23, 1931, until some time in July of that year, and the testimony of claimant's expert witness is that in September, 1931, he had merely ''the *beginning signs* of myocarditis.''

On the question of whether claimant has shown any causal connection between the injury to his leg and the heart condition which disabled him in March, 1932, the testimony is exceedingly vague and unsatisfactory. Claimant was not interrogated with respect to infection in his leg during the period he was receiving compensation, although he did make the general statement, ''they were going to take my leg off.'' Dr.

Shapiro testified claimant gave him a history of severe infection in the wound and spreading above the knee but that it subsided and the wound healed up before claimant returned to work. This witness stated that severe infections are common causes of myocarditis and that, in view of the history claimant had given him, he had concluded "that a part of [claimant's] myocarditis, certainly a good part of it, was due to that infection at least."

Granting, for present purposes, that the evidence of Dr. Shapiro was sufficient to sustain a finding that there was causal connection between the injury and the heart condition which disabled claimant for several weeks in January, 1932, and totally on March 14 of that year, such connection would not justify the setting aside of the final receipt, upon the theory that it was based upon a mistake.

Viewed in the light most advantageous to claimant, the evidence shows that his disability recurred in January, 1932, and that there was such a change in his physical condition, subsequent to the termination of the agreement, as would, under the provisions of paragraph two of Section 413, have revived his employer's liability to pay compensation, if the petition for reinstatement of the agreement had been filed with the board "within one year after the date of the last payment of compensation." In this connection, it may be noted that not only the heart attack from which claimant suffered in January of 1932, but also the severe myocarditis which began on March 14 of that year, both occurred within one year after the last payment of compensation. No action, however, was taken by claimant or on his behalf until June 21, 1932.

A mere mistaken belief upon the part of an employe and his employer at the time an agreement is terminated by a final receipt that the employe may return to work without danger of any recurrence of disability

is not the kind of a mistake of fact contemplated by Section 434.

Under the scope and intendment of our statute, the parties in this case must be presumed to have had in contemplation the possibility that disability might recur as the result of the spreading of infection through the blood stream, or from many other causes, attributable to the original injury. The legislature, manifestly, had such possibilities in mind and made provision for them in the second paragraph of Section 413 by enacting therein that the terminated agreement should be reinstated when a change in the employe's physical condition warranted the resumption of compensation payments. But by the amendment of 1927, supra, it expressly provided that, except in the case of eye injuries, no agreement shall be reinstated unless the petition therefor is filed within the limitation therein prescribed. If apparent hardships result under special circumstances, the remedy is with the legislature; it is our duty to apply the law as we find it.

In our opinion the most that can be said of claimant's case is that if the petition had been filed in time, he might have been entitled to a reinstatement of the agreement, under the second paragraph of Section 413. We think it is clear, under all the evidence, that no mistake, within the meaning of Section 434, existed at the time the receipt was executed. An illustration of the kind of mistakes of fact, contemplated by Section 434 and the first paragraph of Section 413, as justifying the setting aside of a final receipt or the review of an agreement will be found in McKissick v. Penn Brook Coal Co., 110 Pa. Superior Ct. 444, 168 A. 691, where the final receipt was signed upon the assumption of both parties that the claimant in that case had suffered merely a slight concussion of the brain and partial dislocation of his right shoulder, whereas, when x-rays were subsequently taken, it was discov-

ered that instead of a slight concussion as the result of the accident there had been a depressed fracture of the right frontal bone and a fracture at the base of the skull. Again, in Kitchen v. Miller Bros. Co., supra, the claimant was induced by improper conduct of a representative of his employer to sign an agreement for compensation for the loss merely of his index finger, whereas he had suffered not only the loss of that finger but also the industrial use of his thumb. See also Zavatskie v. P. & R. C. & I. Co., 103 Pa. Superior Ct. 598, 159 A. 79.

By the express provisions of Section 434 a final receipt is prima facie evidence of the termination of the employer's liability to pay compensation and the burden was, therefore, upon the present claimant to prove that his receipt was founded upon a mistake of fact. In our opinion, he has failed to meet this burden.

Judgment reversed and here entered in favor of appellants.