## Reddicks, Appellant, v. Welsbach Gas & Electric Company et. al.

Argued October 14, 1936. 

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Edward A. Collins, Jr.,* of *Hepburn & Norris,* for appellant.

*Arthur T. Porteous,* for appellee.

OPINION BY CUNNINGHAM, J., December 11, 1936:

The claimant in this workmen's compensation case
had been in the employ of Welsbach Gas & Electric
Company for some years as an outside and inside sales-
man. On August 21, 1930, he first suffered accidental

injuries to his right knee, through a fall in front of a building owned by the U. S. House Furnishing Company, and brought an action for negligence against that company in which he averred he had "sustained traumatic arthritis and other severe and serious injuries to his right knee." The result of that litigation was the payment to claimant in October 1933, of $750, as damages.

Early in January, 1931, claimant resumed his work with the present defendant. While in the course of his employment he sustained a second injury to the same knee on March 9, 1932, through another fall. Thereupon an open agreement was entered into between the present parties, under which claimant was paid $15 a week for total disability until May 30, 1932, (a period of 10 6/7 weeks) when he signed a final receipt and returned to work. The receipt was plainly entitled, "Final Settlement Receipt," and by it claimant acknowledged the receipt at that time of $27.86, which, with payments theretofore received, aggregated the total sum of $162.86, "for all injuries received ...... on or about the ninth day of March, 1932." Claimant, apparently an intelligent business man, testified he read the receipt before signing it, and the letter in which it was enclosed advised him that the payment then made was "final compensation."

His explanation for not continuing with his employment was that his employer proposed that he go to work upon "a straight commission basis" instead of the salary of $25 a week he had been receiving prior to the accident, but he also testified his main reason was that he could not get around properly or go up and down stairs. He has not worked since that time.

On January 17, 1934, more than one year after the last payment of compensation under the agreement but within 300 weeks from the time of the second accident, claimant filed with the board a petition under

section 434 of the amendatory act of June 26, 1919, P. L. 642, 669, 77 PS §1001, to set aside the final receipt and reinstate the agreement for compensation for total disability. The basis for the application was thus stated in the petition: "That the signing of the said final receipt was founded upon a mistake of fact concerning the true physical condition of your petitioner, in that he was, at the time, permanently and wholly disabled and prevented thereby from further gainful occupation." There was no suggestion in the petition of any fraud, coercion, or other improper conduct upon the part of the employer in procuring the execution of the receipt. In its answer the employer denied all the averments of the petition.

After hearings on May 18, 1934, and February 21, 1935, the referee made findings to the effect that the final receipt was not executed through any mistake of law or fact and that "any and all disability due to or resulting from [claimant's] accident of March 9, 1932, had ceased on May 30, 1932, when he signed the final receipt"; the petition was accordingly dismissed.

Upon appeal by claimant to the board, these findings of the referee were practically reversed and the board substituted therefor its own conclusions that claimant's kneecap was broken as a result of the second accident; that he was totally disabled at the time the final receipt was signed; that he "did not fully realize his rights to compensation during the period of his disability"; and that the final receipt should be set aside and the agreement reinstated upon the ground that the receipt had been signed "through a mistake of fact."

The employer then appealed to the common pleas and that tribunal, after reviewing the record, stated it could not find either in the testimony of claimant or that of the medical and X-ray experts "any basis for an inference that the claimant was more than temporarily disabled by the second accident or that his disability is

now any greater than it was prior to this accident; nor can we find in the record sufficient evidence to support a finding of causal connection between the second accident and the claimant's present disability."

Referring to the testimony of claimant himself, PARRY, J., speaking for the court below, said, "Furthermore, the claimant himself nowhere testifies that his disability is greater now than it was during the period between the first and the second accident. He says he does not use his cane any more now than he did then. The pain is no greater now than it was then and he cannot say that the condition of his knee has changed for the worse. His conclusion is that he is unable to work as an outside salesman at the present time because of the necessity of using a cane and the difficulty in going up and down stairs and that he was permanently and wholly disabled at the time he signed the final receipt, although he didn't find it out until nineteen months later. The mistake he appears to rely upon is found in his statement that he didn't know that the X-ray taken after the second accident showed a crack in the kneecap and that none of the doctors ever told him what was the matter with his knee. Since this crack appears to have healed and is nowhere shown to have caused an increase in his disability, we do not think his ignorance of its existence at some time prior to his signing the receipt a sufficient reason for setting that receipt aside."

For the reasons thus stated, the common pleas sustained the employer's exceptions to the findings of the board and entered judgment for the defendant. The present appeal is by the claimant from that judgment.

Upon a careful examination of the record, we, also, are unable to find therein any support for the findings and conclusions of the board.

As it is provided in the section under which these proceedings were instituted that a final receipt shall

be prima facie evidence of the termination of the employer's liability to pay compensation, claimant had the burden in this case of showing, primarily, that during the period between the signing of the final receipt and the date of the hearing he had a disability attributable to the second accident which was greater in degree than, and in addition to, the disability incident to the first accident—in other words, that he had not already been paid under the agreement for the aggravation of his condition caused by the second accident. In addition to claimant's own testimony, which is fairly summarized in the above quoted excerpt from the opinion of the court below, it is to be noted that we have in this record the results of three X-ray examinations of claimant's knee made respectively on October 31, 1930, about two months after the first accident, March 19, 1932, ten days after the second accident, and May 17, 1934, immediately before the first hearing. From the evidence thus adduced, it is apparent that claimant had not had a normal knee for a considerable period prior to the first accident. Dr. J. W. Frank, who made the X-ray examination shortly after the first accident, testified, in substance, that claimant had an "involvement of the bone" from the absorption of lime salt which was not a recent condition and which had weakened the bones, making them "shell-like," and that there was no fracture or dislocation from the first accident.

The X-ray examination of March 19, 1932, ten days after the second accident, was made by Dr. Wm. S. Newcomet, who testified this examination disclosed claimant had "a rather unusual longitudinal split in the patella or kneecap" and also had "an old arthritis." The witness said these conditions caused the disability from which claimant was then suffering. The compensation agreement was evidently based upon that disability. Dr. Newcomet also made the X-ray pictures

of May 17, 1934, the day before the first hearing. An excerpt from his testimony reads: "Q. Will you describe the present condition of the knee? A. He has a good deal of thickening around the kneecap, and to make this conclusion I made a plate of his opposite knee so as to get his normal knee, so to speak, and it shows a distinct roughening of the antero surface of the patella with some thickening around the patella and also there is a decalcification—that is the bone cells of the bone making up that knee are not the same as in a normal knee. Q. Has the fracture entirely cleared up, Doctor? A. I described how it cleared up; you cannot see the line of it; it is only the thickening from callus formation; there is no sign of fracture."

Dr. James T. Carrell examined claimant on September 9, 1930, and November 6th of that year, both of these dates being prior to the second accident, and on May 20, 1932, a few days before the final receipt was executed. The conclusion of the referee that any and all disability attributable to the accident of March 9, 1932, had ceased when the final receipt was signed is fully supported by the following quotation from Dr. Carrell's testimony: "Q. Was the condition of his knee as far as disability is concerned, practically the same in November, '30, as it was in May, '32? A. Practically the same. Q. In your opinion, he had a permanent condition on both occasions? A. He did." In addition to proving disability in the manner and to the extent indicated, claimant had the burden of supporting his averment that the receipt was founded upon a mistake of fact by competent evidence of a mistake within the meaning of section 434.

We have repeatedly said that a mere mistaken belief upon the part of an employee, or of both parties, at the time an agreement is terminated by a final receipt that the employee may return to work without danger of any recurrence of disability is not the kind

of mistake of fact which is contemplated by that section: *Reichner v. P. Blakiston's Son & Co. et al.*, 115 Pa. Superior Ct. 415, 422, 175 A. 872.

The remedy for an increase or recurrence of disability after payments have been discontinued is provided by the second paragraph of section 413, as amended by the Act of April 13, 1927, P. L. 186, 77 PS §772, but, except in eye injuries, the legislature has expressly provided that it must be invoked within one year after the last payment of compensation. See also a discussion of the subject in *Borneman v. H. C. Frick Coke Co.*, 122 Pa. Superior Ct. 391, 186 A. 223, and in *Gardner v. Pressed Steel Car Co.*, 122 Pa. Superior Ct. 592, 186 A. 410.

When a claimant shows he is entitled to relief under section 413 his final receipt automatically disappears from the case. If this claimant returned to work under a mistaken belief that the disability occasioned by the second accident had ceased, he had a whole year in which to petition for the reinstatement of the original agreement.

This record will be searched in vain for any evidence supporting the finding of the board that the receipt was founded upon a mistake of fact within the intendment of section 434.

Obviously, a person of claimant's intelligence and experience cannot be heard to say that he did not realize what he was doing when he read and signed the receipt here in question.

As the findings and conclusions of the board were not supported by any competent evidence, the court below was justified in entering judgment for the defendant and its insurance carrier.

Judgment affirmed.