## Lowdermilk *v.* Lorah (Employers' Liability Assur. Corp., Ltd., Ap.)

Argued November 18, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*James J. Burns,* for appellant.

*Robt. F. Pontzer,* with him *W. W. Barbour,* for appellee.

OPINION BY BALDRIGE, J., December 17, 1936:

The claimant in this workmen's compensation case was injured on September 30, 1929, due to the collapse of a scaffold. He sustained a blow at the base of the skull, contusions and abrasions to the upper part of his body, and a fracture of the transverse process on the right side of the fourth lumbar vertebra. Under

an agreement, dated October 16, 1929, he was paid compensation for total disability to January 1, 1930. On February 22, 1930, he executed a final receipt, setting forth the balance due, the entire amount paid, the number of weeks covered, when disability began and when it ended, and that he was able to return to work January 1, 1930. It was not until almost four years thereafter, to wit, September 8, 1933, that he filed a petition for review, wherein he alleged the receipt was based on a mistake and procured by fraud; that at the time he signed it he was disabled, and "am disabled at the present time and unable to work. I was told by the man who delivered the final receipt to me that I would continue to receive my compensation and that it was only a matter of form to sign the said paper. Had I known I was signing a final receipt, I would not have signed it." An answer was filed by his employer, denying the allegations in the petition and alleging that as the petition was not filed within one year after the last payment of compensation, the claimant is barred by section 413 of the Workmen's Compensation Act of 1915, June 2, P. L. 736, as amended by the Act of 1927, April 13, P. L. 186, sec. 6 (77 PS sec. 771).

The referee found that the petitioner's disability had increased since the date he signed the final receipt, but that the agreement and final receipt were not signed by mistake; and, as more than one year had elapsed since the date of the last payment of compensation and the signing of the final receipt, an award was denied. Upon an appeal to the board, that tribunal held that the findings of the referee were "not sufficiently responsive to the averments in claimant's petition, or the evidence as a whole (irrespective of the merits), as well as the relevant provisions of Section 434," and remanded the record to the referee for further hearing and determination. The referee, after a further hearing, found that the signing of the receipt was not procured

by fraud, coercion, or improper conduct, or that there was a mistake of law or of fact as contemplated by section 434; that the evidence showed conclusively that the employee knew what he was signing when he affixed his name to the final receipt; and dismissed the petition to review.

The board, on appeal, found that the claimant was fifty per cent disabled at the time he signed his final receipt and remained thus disabled until February 2, 1934, when his disability decreased to twenty-five per cent, and that the receipt was obtained by improper conduct of defendant's agent. It set aside the final receipt, and ordered that the agreement be reinstated and compensation paid on the basis of disability found. Upon appeal to the court of common pleas, the exception to the board's findings of fact and conclusions of law was dismissed, and the award affirmed.

While the petition did not set forth that it was filed under section 434 of the Workmen's Compensation Act, supra, as amended by the Act of 1919, June 26, P. L. 642, sec. 6 (77 PS sec. 1001), if the claimant is entitled to compensation under either section 413, supra, or 434, we will treat the petition as having been filed under the appropriate section, as we have frequently said that it is not the policy of this court, in compensation cases, to impose penalties for not filing a petition under the proper section.

It is very apparent that the claimant is not entitled to compensation under section 413, which applies to an agreement or an award and not to a receipt, as it expressly stipulates that the petition must be presented within one year after the date of the last payment of compensation: *Keifer v. P. & R. C. & I. Co.*, 102 Pa. Superior Ct. 235, 156 A. 722; *Zavatskie v. P. & R. C. & I. Co.*, 103 Pa. Superior Ct. 598, 159 A. 79; *Reichner v. Blakiston's Son & Co.*, 115 Pa. Superior Ct. 415, 175 A. 872. We will, therefore, confine ourselves to a con-

sideration whether the record discloses that claimant has brought himself within section 434, which provides that the final receipt shall be prima facie evidence of the termination of the employer's liability to pay compensation under an agreement, but that the board or referee may at any time set aside a final receipt, if it be proved that such receipt was procured by fraud, coercion, or other improper conduct of a party, or is founded upon a mistake of law or of fact.

The evidence established that Dr. Switzer, the claimant's own physician, and the only medical witness called, was of the opinion that the claimant at the time he signed the final receipt had made a complete recovery and so reported that fact to the insurance company on January 28, 1930, although at the hearing he stated: "But looking back on it now, I would say that he was disabled." He further testified that some "mental symptoms began to develop, which would be in December of '29;" that the claimant made a visit to his office some time between February 1st and 22d, when he was suffering from traumatic neurosis, having headache, dizziness, mental confusion, etc.; that he got worse after signing the receipt, requiring subsequent treatment, but he did not see him again professionally until October 17, 1930.

The plaintiff testified, in part, as follows: "Q. Now, as a matter of fact when you signed this final receipt, you actually thought you could go back to work? A. Well, I hoped I could, I was in the hopes I was not hurt very bad ...... Q. It was actually in your own mind that you believed you could go back to work? I am not talking about what happened since, I mean at that time. A. I did not know for sure whether I could or not. I hoped I could."

The evidence was entirely too vague to warrant the finding that he was afflicted with any definite mental trouble when he signed the agreement and receipt. The

testimony shows that claimant had attended high school and was perfectly competent to read and write. Indeed, three letters, very well composed, written by him in May, 1930, to the agents of the insurance carrier, relating to his failure to receive a duplicate check for one that had been lost, clearly indicate that he is an intelligent man and that he understood the full import of the receipt he signed. No mention was made in these letters that he was entitled to any further compensation than that he had received. It is true that the defendant offered no evidence to contradict the statement made to the claimant when the receipt was signed that he would be paid compensation as long as he was disabled, due to the fact that the man alleged to have made it had died prior to the hearing. If there had been a recurrence or increase in disability, he would have been entitled to additional compensation under section 413, if application had been made in time.

In *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146, it was held that a scintilla of evidence was not sufficient to set aside a final receipt. The present Chief Justice, speaking for the court, in the course of his opinion, said (p. 507): "While courts have been very generous as to the rules of evidence to establish causation when initial compensation depended on it, yet when that compensation has been paid and a final receipt given, the evidence to overthrow the latter must be of a more definite nature. While the quantity and quality of the evidence necessary to set aside a final receipt in a compensation agreement may not be analogous to that required in other writings, it must be such as to make it certain to the trier of the fact that the mistake existed."

That same "quantity and quality of the evidence" should be required to show improper conduct.

The appellee cited *Graham v. Hillman C. & C. Co.*, 122 Pa. Superior Ct. 579, 186 A. 400; but there it was

clear under the testimony that the representatives of the employer knew from the reports of its own doctors that claimant was disabled when the final receipt was taken in which it was recited that the disability of the claimant had terminated and that he was able to return to work. In *Kessler v. North Side Packing Co. et al.*, 122 Pa. Superior Ct. 565, 186 A. 404, also relied on by appellee, a threat was made to withhold compensation then overdue unless complainant signed an agreement to which his employer was not entitled. That was obviously a species of coercion that is forbidden by the statute.

No such situation exists here. The only excuse for the claimant's unreasonable delay in not proceeding for relief more promptly was that he "didn't know anything about the compensation law."

We are of the opinion that the uncorroborated evidence of the plaintiff, in support of the charge of improper conduct of the defendant's agent, did not, in view of all the attending circumstances, meet the standard required to set aside the final receipt.

Judgment of the lower court is reversed.