Opinion by
 

 Stadtfeld, J.,
 

 This is an appeal by the State Workmen’s Insurance Fund from the decree of the Court of Common Pleas of Cambria County, dismissing appellants’ appeal from the order of the referee and the Workmen’s Compensation Board, setting aside a final receipt and reinstating compensation for total disability, and entering judgment on this award.
 

 The claimant, Peter Nigbrowich, while in the employ of the Taylor McCoy Coal & Coke Co., suffered an accidental injury on October 18, 1933. Under date of October 31, 1933,, the parties entered into an open agreement for the payment of compensation for total disability; the description therein of the accidental and resulting injury reads: “While moving machine from face using a bar as a skid, the bits of the machine caught bar, bar striking claimant on leg causing fracture of left leg.” Payments were made under the agreement until January 29, 1934, upon which date appellee returned to work. On February 28, 1934, appellee executed a final receipt. On March 26, 1935, appellee ceased work again and on July 27,1935, filed a petition to set aside the final receipt under Sec. 434, Act of J une
 
 *534
 
 26, 1919, P. L. 642. This petition, it appears, was filed more than one year after the last payment of compensation but after only about 92 weeks from the first payment of compensation under the agreement.
 

 Appellants contend, in effect (1) that the testimony supports neither a finding of improper conduct nor one of mistake in the execution of the final receipt, and (2) that appellee’s claim amounts, in substance to a petition for reinstatement of the compensation agreement upon recurrence of disability under Sec. 413, Act of June 26,1919, P. L. 642, as amended by the Act of April 13, 1927, P. L. 186, 194; and the said petition, having been filed more than one year after the date of the last payment of compensation, is barred by the provision in Sec. 413, limiting the period for filing such petitions.
 

 In accordance with the frequently expressed policy of this court, declining to hold claimants in compensation cases to strict rules of pleading
 
 (Reichner v. Blakiston’s Son & Co. et al.,
 
 115 Pa. Superior Ct. 415, 418, 175 A. 872), but preferring to consider the pleadings in a light most favorable to the claimant
 
 (McKissick v. Penn Brook Coal Co.,
 
 110 Pa. Superior Ct. 444, 448, 168 A. 691) we have often treated a petition filed under Sec. 413 as being filed under Sec. 434.
 
 [1]
 
 The converse would, in the instant case, be disadvantageous to the claimant and imply a reversal of a well-considered policy.
 

 “......If the claimant is entitled to compensation under either section 413, supra, or 434, we will treat the petition as having been filed under the appropriate section, as we have frequently said that it is not the policy of this court, in compensation cases, to impose penalties for not filing a petition under the proper section.
 

 
 *535
 
 “It is very apparent that the claimant is not entitled to compensation under section 413, which applies to an agreement or an award and not to a receipt as it expressly stipulates that the petition must be presented within one year after the date of the last payment of compensation:
 
 Keifer v. P. & R. C. & I. Co.,
 
 102 Pa. Superior Ct. 235, 156 A. 722;
 
 Zavatskie v. P. & R. C. & I. Co.,
 
 103 Pa. Superior Ct. 598, 159 A. 79;
 
 Reichner v. Blakiston’s Son & Co.,
 
 115 Pa. Superior Ct. 415, 175 A. 872. We will, therefore, confine ourselves to a consideration whether the record discloses that claimant has brought himself within section 434, which provides that the final receipt shall be prima facie evidence of the termination of the employer’s liability to pay compensation under an agreement, but that the board or referee may at any time set aside a final receipt, if it be proved that such receipt was procured by fraud, coercion, or other improper conduct of a party, or is founded upon a mistake of law or of fact.”
 
 Lowdermilk v. Lorah,
 
 supra.
 

 The testimony of the claimant, Peter Nigbrowich, in the instant case, relevant to the circumstances surrounding the signing of the final receipt was as follows: (Direct examination) : “Q. Did he tell you he was from the insurance company? A. Well, he tells he is from the insurance company. Q. What else did he say? A. Well, he fetched me that last check, you know, and he wants me to sign them there papers and he tells me if you sign them there papers, I will give you that last check: that’s what he tells me. He didn’t explain to me what that paper means. I can’t read English, then he didn’t explain what them papers means.......Q. Tell the court exactly what the man said or did when he brought the paper to your home? A) See that day when he comes with the papers, he fetched me that last check for compensation, and then holds that check in one hand, then he showed me them there papers; he
 
 *536
 
 tells me if you sign them there papers, I will give you that cheek right away; if you don’t sign it, I take the check off of you, I won’t pay you. ...... Q. I am asking you did Dr. Bergstein at that time when you signed the check, did he tell you you were able to go back to work? A. Well, he tells me just sign those papers. Q. Who told you? A. The doctor. If anything happens the leg is no good, he tells me he is going to stand for me. (Cross-examination): Q. Did you know what you were signing? A. I didn’t know. Q. You knew it was a receipt, didn’t you? A. I know it is some kind of paper, but I don’t know what that paper means. Q. Do you sign any paper at all anybody asks you any time? A. Well, he tells me to sign it and I sign it, see; I don’t know what it means, that paper. Q. But you knew it was a receipt for that last check, didn’t you? A. (No response). (Redirect Examination) : Q. The man asked you if you knew that was a final receipt? A. Well, he tells me only that’s going to be the last check; he tells me you sign that, that will be the last pay for you.”
 

 At no time did appellant offer its representative as a witness to deny claimant’s assertion with reference to the conditions under which the final receipt was secured.
 

 In
 
 Kessler v. North Side Packing Co.,
 
 122 Pa. Superior Ct. 565, 186 A. 404, this court said, at p. 575: “We think the threat to continue to withhold compensation then overdue unless and until claimant signed an agreement to which his employer was not entitled amounted to one of the species of coercion forbidden by the statute.”
 

 In
 
 Graham v. Hillman Coal & Coke Co.,
 
 122 Pa. Superior Ct. 579, 186 A. 400, this court said, at p. 585: “It is the exclusive function of the compensation authorities to weigh and consider the testimony and make reasonable deductions therefrom. Our only duty and power is to determine whether there was sufficient com
 
 *537
 
 peten! evidence to sustain their findings. Upon an attentive reading of the testimony, we are satisfied there was evidence sufficient to support, at least, a finding that claimant did not understand the significance of the final receipt and that it was procured by such improper conduct upon the part of the representatives of appellant that the board was justified in setting it aside.”
 

 So, in the instant case, the referee and the board found as a fact “That the claimant cannot write or read English, and at the time the final receipt was presented to him, he was not aware of what he was signing, but signed the paper as presented to him by the representative of the insurance carrier in order to get his check for compensation.” It is clear from the evidence the check for compensation would not have been given him had he (though unaware of its significance) refused to sign the receipt. In view of the evidence sustaining the findings of fact by the referee and the board, we are of the opinion that the execution of the final receipt was procured by improper conduct on the part of the insurance carrier’s representative.
 

 Thus the record disclosing that appellee had brought himself within See. 434, he was entitled to file his petition to set aside the final receipt, because of improper conduct on the part of the insurance carrier’s representative, at any time within the prescribed periods for the payment of compensation, the limitation of one year being inapplicable to this section:
 
 Godfroid v. Rockhill Coal & Iron Co.,
 
 supra. Section 434 provides that a final receipt may be set aside “at any time” upon proof that it was procured by fraud, coercion, or other improper conduct of a party, or founded upon a mistake of law or fact, i. e., any time within the limitations of 300 weeks for partial and 500 weeks for total disability,
 
 *538
 
 prescribed by the statute:
 
 Zupicick v. P. & R. C. & I. Co.,
 
 108 Pa. Superior Ct. 165, 164 A. 731.
 
 [2]
 

 The assignment of error is overruled and judgment affirmed.
 

 [1]
 

 McKissick v. Penn Brook Coal Co.,
 
 supra;
 
 Godfroid v. Rockhill Coal & Iron Co.,
 
 111 Pa. Superior Ct. 296, 169 A. 577;
 
 Reichner v. Blakiston’s Son & Co. et al.,
 
 supra;
 
 Lowdermilk v. Lorah,
 
 124 Pa. Superior Ct. 356, 188 A. 621.
 

 [2]
 

 See also
 
 Bucher v. Kapp Bros.,
 
 110 Pa. Superior Ct. 65, 167 A. 652;
 
 McKissick v. Penn Brook Coal Co.,
 
 supra;
 
 Lomancik v. Youghiogheny & Ohio Coal Co.,
 
 119 Pa. Superior Ct. 263, 180 A. 731;
 
 Reichner v. Blakiston’s Son & Co. et al.,
 
 supra;
 
 Graham v. Hillman Coal & Coke Co.,
 
 supra.