## Eberst *v.* Sears Roebuck & Co., Appellant.

Argued March 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW and STERN, JJ.

*Philip Werner Amram,* with him *Leo A. Nunnink* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Julius J. Strba,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 25, 1939:

Appellee, a radio service man, while erecting an aerial on May 10, 1930, fell twenty or more feet to a sidewalk. He executed a compensation agreement on May 22d, wherein the result of the injury was set forth as concussion of the brain, contusion of the right forearm and right arm, right shoulder and right side of the head. He was discharged by his physician in June, and returned to work with the latter's approval. On June 6th he executed a final settlement agreement terminating appellant's liability. On August 2, 1933, more than three years later, he filed a petition, under Section 434 of the Workmen's Compensation Act,[1] to set aside this final receipt, stating he had been fraudulently informed that it was not a final release but only an acknowledgment of payments previously received, and that he was now suffering from an eye injury as a result of the accident.

A number of hearings were held. At the first, in 1933, appellee testified he had been suffering from blurred and double vision. The referee denied recovery, finding claimant had not established any causal connection between the accident and the eye condition, and that the receipt was not induced by fraud. The Workmen's Compensation Board on appeal characterized claimant's testimony on the question of fraud as "pure froth," but ordered a new hearing to allow him to submit competent legal proof of causation, and authorized the appointment of an impartial eye specialist.

---

[1] Act of June 2, 1915, P. L. 736, Section 434, as added June 26, 1919, P. L. 642, Section 6.

Pursuant thereto a hearing was held before a new referee on May 9, 1935. The specialist testified appellee suffered no actual loss of vision, but his condition was due to imagination, influenced by nervousness. The claim was again rejected, on the ground that there was no competent evidence to establish loss of vision. Claimant once more appealed. The Board granted a rehearing, stating that in view of the contradictions in the medical testimony previously taken, new testimony should be heard.

At the next hearing, before still another referee, two new doctors, mentioned in the petition for rehearing, testified but did not add materially to appellee's case. One witness who examined appellee in June and September, 1935, formed his opinion from the claimant's history and found permanent disability had resulted, admitting, however, that his conclusions were based solely on appellee's statements to him.[2] In 1936, this referee awarded compensation. The Board remanded the case to the same referee for another hearing, allowing the parties to offer more evidence, and expressing disbelief in appellee's disability.[3]

---

[2] "I see the manifestation and take the word of the patient that he has blurring, but can't say I understand why he has it."

[3] "We would not be so much impressed with the defendant's petition for rehearing were it not for certain intrinsic weaknesses in the claimant's case. We are loath to further postpone a final disposition of this matter and perhaps would not do so were it not for the fact that the record itself gives ground for considerable doubt as to the bona fides of the claimant's case. Chairman Dale in his former opinion characterized part of the claimant's testimony as 'pure froth.' Dr. H. H. Dight, an impartial eye specialist, testified before Referee Lawly and on the basis of whose testimony the Referee entered a disallowance, was of the opinion, although he did not state so in so many words, that the claimant had not given him a frank and honest account of what he could actually see. The last hearing, at which an allowance was made, consisted solely of testimony on behalf of the claimant and two physicians, neither of whom could find any objective symptoms to account for the claimant's complaint, but who, accepting the claim-

The referee held another hearing. A new medical expert was examined; his testimony was directly opposed to recovery. Appellee's former superior testified that no statements or representations were made when the final receipt was executed, and he was corroborated by his secretary. Claimant offered no additional evidence apart from the rebuttal testimony of himself and his wife that there had been fraud. The referee found that appellee's claim was bona fide, and that he executed the receipt under mistake of fact which warranted setting it aside.

This time the Board sustained the award, stating that if there was not such a mistake as entitled appellee to relief under Section 434 by setting aside the receipt, the award was nevertheless proper under Section 413, paragraph 2, for recurrence or increase of disability. The Common Pleas and the Superior Court sustained recovery primarily under the latter section.

While Section 434 of the Workmen's Compensation Act permits a final receipt to be set aside for mistake of law or fact, it is not every type of mistake that is intended to be effective for that purpose. Where one is under a mistaken belief that he has recovered sufficiently to return to work, such mistaken belief would not of itself warrant setting aside a final receipt.[4] Ap-

---

ant's complaints at their full value, felt that there was a disability and that the disability was causally connected with the accident. . . . We express no opinion at this time upon the merits of the case, but after reading the entire record from beginning to end, we do not have any clear conviction that the claimant's disability is as great as he states it is or that it is real and not feigned. It is this which primarily moves us to remand the record."

[4] *Shetina v. Pittsburgh Terminal Coal Corp.*, 114 Pa. Superior Ct. 108, 112; *Reichner v. Blakiston's Sons & Co. et al.*, 115 Pa. Superior Ct. 415; *Reddicks v. Welsbach Gas & Electric Co. et al.*, 124 Pa. Superior Ct. 285, 291-292; *Borzor v. Alan Wood Steel Co.*, 130 Pa. Superior Ct. 182, 184; *Augustine v. Evert Lumber Co.*, 134 Pa. Superior Ct. 167, 169.

pellee complains that he had been unaware that blurring of the eyes and double vision might recur. This is doubtful, in view of his testimony that at the time he signed the receipt his doctor stated that he had "no way of telling what this might come to." If his doctors had mistakenly diagnosed his condition, or if claimant really had an eye condition, previously unsuspected, which was satisfactorily proved, it might be such a mistake as would have been adequate to set aside the receipt.

The sole question in this case hinges upon the quantity and quality of evidence necessary to overthrow a final receipt terminating an employer's liability. If it is to have any validity at all, it should be able to withstand the attack that has been made on it in this case. We endeavored in *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, to bring the legal incidents of such instruments more in line with those of similar documents used in the ordinary transactions of business. We shall again restate the rule of that case, and demonstrate that the evidence in the present case is completely insufficient.

In the Shuler case we described the effect of a final receipt and the character of the evidence necessary to disturb it. There, as here, a number of years intervened before the effort was made to set aside the receipt, and, as here the only evidence supporting the claim was the employee's own history of the case and medical testimony based on that history. We said, at p. 507: "It is apparent at once that, unless great care is maintained in the acceptance of such proof, employers are easily at the mercy of designing employees; it will become quite easy to fabricate testimony to support a recovery, and its contradiction is almost impossible." We there held that the evidence to overthrow a final receipt must be of a more definite and specific nature than that upon which initial compensation is based; the causation between the alleged disability and the accident must be established by more than simply the testimony of the

employee and medical testimony based solely upon the employee's own history of the case. It is the duty of our tribunals not merely to ascertain whether there is some evidence to support the setting aside of the final receipt, but whether the evidence is definite and specific and of the required quantity and quality. The controlling facts in the Shuler case are almost parallel to those in this case. Moreover, the evidence here indicates, as the doctors testified, that appellee is not suffering from a disabling eye condition, but that his complaint, if any, is purely mental, and his only eye trouble is far-sighted astigmatism. This does not constitute a loss of industrial vision.

Nor may the receipt be disregarded and recovery allowed under paragraph 2 of Section 413 of the Act[5] which authorizes reconsideration of an agreement or an award of compensation where there has been a recurrence or increase in the disability of the injured employee. In view of appellee's own testimony that at the time he signed the receipt his vision was blurred, he was aware then of the existence of his eye condition, and it is difficult to see how this could be regarded as a recurrence or an increase of disability. But, even assuming that this Section could be invoked, it does not follow that the final receipt is to be entirely disregarded. Although fraud or mistake need not be shown under this paragraph of Section 413, the degree of proof required to overthrow the effect of the final receipt is the same as in a proceeding under Section 434. The statute gives the receipt the weight of "prima facie evidence of the termination of the employer's liability to pay compensation under such agreement or award." We did not intend in the Shuler case to restrict the rule

---

[5] Act of June 2, 1915, P. L. 736, Section 413, as amended and renumbered June 26, 1919, P. L. 642, Section 6, and amended April 13, 1927, P. L. 186, Section 6.

solely to proceedings under Section 434 to set aside the receipt. The purpose of the rule is to prevent the maintenance of false claims and to give some degree of assurance to an employer that his liability has been ended or will not be reëstablished unless it is upon evidence which clearly warrants it. The evidence seeking to overthrow such receipt should be precise and credible. Moreover, *Blackwell v. Dahlstrom M. C. Co.,* 111 Pa. Superior Ct. 93, at 95, recognizes the rule of the Shuler case as applicable to proceedings under Section 413, where a final receipt has been given.

We do not intend to lay down any harsh requirement governing the setting aside of receipts of this character, but there must be some protection accorded the employer or he can never know when he might not become liable for the alleged recurrence of an injury, especially an eye injury, where there is no time limitation fixed. This case was heard by three different referees; many hearings were held before the Workmen's Compensation Board; many times disbelief in the employe's claim was freely asserted. It is apparent the receipt should not have been set aside on the showing here made. We see no necessity, after the many hearings had before the various referees and the Workmen's Compensation Board, of returning this case for further evidence. See *Easton v. Elk Tanning Co.,* 129 Pa. Superior Ct. 535, 546.

The judgment is reversed and the case is remanded to the Workmen's Compensation Board with instructions to disallow the claim.