## Cooper v. Byllesby Engineering and Management Company (et al., Appellant).

Argued April 26, 1940.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*James J. Burns, Jr.,* with him *Gustav M. Berg,* for appellants.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellee.

OPINION BY PARKER, J., June 24, 1940:

The prime question presented in this appeal is whether the evidence produced by claimant was sufficient to set aside a final receipt.

The claimant met with a severe injury while in the course of his employment with the defendant, having been struck on the head on June 5, 1930, by a pipe and as a result having fallen ten feet into a pit. He suffered a depressed fracture of the skull and a necessary operation was performed. Compensation was paid to him under an open agreement until July 16, 1930, when he returned to work for the same employer. A final receipt was executed by him on July 18, 1930. More than six years later, October 26, 1936, claimant presented a petition to the board to set aside the final receipt and out of that application this appeal arises.

After hearing, a referee set aside the receipt and, on appeal to the board, the record was returned to the referee for the purpose of taking the testimony of an impartial expert to be appointed by the referee. Again

the referee set aside the receipt and, on successive appeals, his action was affirmed by the board and a court of common pleas. The basis of the action of the fact finding bodies was that the receipt was secured by improper conduct on the part of the defendant and that the receipt "was founded upon a mistake of fact."

The most that could be said for claimant's case is that if he had made an application under §413 of the statute, within one year after the date of the last payment of compensation, for a reinstatement of the agreement on the ground that there was a recurrence of disability, there would have been sufficient evidence to have sustained an award for partial disability and possibly at a later date for total disability. The claimant did not pursue that course and waited more than six years when he petitioned the board to have the final receipt set aside under §434. We are of the opinion that the evidence was not sufficient to sustain the findings by the referee and board and that the case is ruled by *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146, and *Eberst v. Sears Roebuck & Co.*, 334 Pa. 505, 6 A. 2d 577. The Shuler case dealt principally with a final receipt grounded upon an alleged mistake of fact and it was there held that the burden was on claimant to establish his right to have a final receipt set aside; that the quantity and quality of the evidence necessary to do so "must be such as to make it certain to the trier of the fact that the mistake existed"; that if the connection of the disability with the accident depends on the opinion of experts, such "causal relation must be shown by testimony as direct and positive as expert and professional testimony can make it" (p. 507). The duty of a reviewing court is thus stated (p. 509) : "Scrutinizing care should be exercised, applications should not be sustained where causation appears by probability alone, and a revoking order should be supported by proof that leaves no doubt in the mind of the determining body that causation exists as required by the rule announced above."

To sustain the finding of fact as to improper conduct on the part of the defendant, the claimant depends solely upon his own testimony. We quote from it as follows: "Q. What conversation took place between you and the man who paid you your last compensation check? A. Some man from the insurance company—I imagine he was from there—brought the check to me and said this was my last compensation check and I saw he had a paper there to sign but I didn't like to go ahead and sign it, but this fellow told me that I had up to 500 weeks to go into the office about it, but I could not draw compensation and work for wages too, and therefore I went ahead and signed it and that is all there is to it. Q. He said you had up to 500 weeks to go into the office? A. Yes. Q. When he spoke about going into the office, what were you talking about, wages, compensation, or what? A. I had this in mind— my injuries over there—and I figured what if they ever got me down and I cannot work again and that is the reason I talked about that. Q. What did he say to you about coming in within 500 weeks? A. The first thing I didn't want to sign it, because I always heard that if you signed up you would be done, but this fellow had me under the opinion that everything would be O. K. and it was only a receipt for that check I was signing and I could come in under 500 weeks and the case could be reopened and if anything turned up I was no better than—" He admitted that the agent told him the payment made at the time the receipt was signed was the last payment he was going to get; that he could read; that he would have understood the receipt if he had read it; and that if he had read it he would not have signed it.

Obviously the claimant cannot be heard to say that he did not realize what he was doing when he signed the receipt in question. Not only is it not a valid excuse for one to say that he did not read a paper when he has had an opportunity to do so and can read, but his own testimony shows that he understood the full consequences of

his action: *Reddicks v. Welsbach G. & E. Co.,* 124 Pa. Superior Ct. 285, 292, 188 A. 417. The evidence clearly shows that claimant knew what he was doing and therefore was not imposed upon: *Lowdermilk v. Lorah,* 124 Pa. Superior Ct. 356, 188 A. 621. It was true that if claimant had a recurrence of disability within one year of the last payment and within the 500 weeks that the agreement had to run, he would be entitled to petition for a renewal of compensation. All that the agent said may have been true, and it is extremely doubtful if claimant could remember after six years the exact connection in which the agent used the words "500 weeks". At least such testimony is too vague, uncertain, and unsatisfactory to justify setting aside a final receipt after that length of time. During all this period of six years, with the exception of a few months when he drove a heavy truck for another employer, claimant was furnished employment by the defendant or through it by one of its affiliates. From August, 1930, until May, 1936, he did not consult a doctor. As we said in *Lowdermilk v. Lorah,* supra (p. 361): "That same 'quantity and quality of the evidence' should be required to show improper conduct [as to show a mistake of fact]."

To show improper conduct claimant depends wholly on his own testimony. What the Supreme Court said with reference to proof of causal connection in *Eberst v. Sears Roebuck & Co.,* supra (p. 510), may be relevant to the proof of improper conduct: "The causation between the alleged disability and the accident must be established by more than simply the testimony of the employee and medical testimony based solely upon the employee's own history of the case." Each is an essential fact to be proved and it would seem that the same rule should be applied in each case.

The alleged mistake of fact relied upon by claimant is that his injury was not confined to his head but that he suffered an additional injury to the lower part of his back, the effect of which has progressed until he is now totally disabled. To sustain this claim he testified that

he had pains in his back while at the hospital—later identified by him as pains in the lower part of his back —and that he has continued to have them ever since; that when he returned to work, which was before he signed the final receipt, he had the same pains but instead of getting better as he anticipated they grew worse. In short, when he signed the receipt he knew there was an injury to his back but he thought it would get better. He also called fellow employees to show his complaints of pain in his back.

Claimant cannot avoid the consequences of this situation for the two doctors upon whom he relied to show causal connection predicated their conclusions as to the existence of an injury, not on proof of anatomical facts existing at the time of the accident, but upon proof of pains in that region at that time from which the injury was inferred. Those doctors did not see claimant until six years after the accident. Consequently, without this proof of pain following the accident he cannot sustain causal connection. There is not a suggestion in the evidence that the surgeon who attended claimant at the time of the accident or any other person misled him as to his condition. In fact, he failed to follow the advice of that surgeon.

It is axiomatic that the mistake contemplated by the statute must be one which occurred at the time the receipt was executed: *Reichner v. Blakiston's Son & Co.*, 115 Pa. Superior Ct. 415, 419, 175 A. 872. "While Section 434 of the Workmen's Compensation Act permits a final receipt to be set aside for mistake of law or fact, it is not every type of mistake that is intended to be effective for that purpose. Where one is under a mistaken belief that he has recovered sufficiently to return to work, such mistaken belief would not of itself warrant setting aside a final receipt": *Eberst v. Sears Roebuck & Co.*, supra (p. 509).

"A mere mistaken belief upon the part of an employe and his employer at the time an agreement is terminated by a final receipt that the employe may return to work

without danger of any recurrence of disability is not the kind of a mistake of fact contemplated by Section 434": *Reichner v. Blakiston's Son & Co.,* supra (p. 422). "We have repeatedly said that a mere mistaken belief upon the part of an employee, or of both parties, at the time an agreement is terminated by a final receipt that the employee may return to work without danger of any recurrence of disability is not the kind of mistake of fact which is contemplated by that section": *Reddicks v. Welsbach G. & E. Co.,* supra (p. 291).

Viewing the case from another angle, the judgment must be reversed. Three experts called by the defendant, one of whom was the surgeon who operated on claimant immediately after the accident, gave it as their opinion that there was no causal connection between the accident and the present condition of claimant's back. They attribute the present disability to arthritis. The surgeon who attended claimant after the accident testified that he made a thorough clinical examination of the patient immediately after the accident and there was then no anatomical evidence of injury to his back. The three experts who testified for claimant based their conclusion on the assumption that claimant had pains in the lower part of his back immediately after the accident and that these continued. This would appear to be a questionable symptom upon which to base the opinion reached. Such evidence did not "make it certain to the trier of the fact" that there was causal connection, an essential elementary fact in showing mistake in this respect. The Shuler case controls the present controversy, as the appellant in its brief has shown by a comparative review of the facts in the two cases in parallel columns. The claimant failed to avail himself of his remedy within the limitation provided in the statute for a recurrence of disability even if we assume that causal connection was shown.

Judgment reversed and it is directed that judgment be now entered for the defendant.