Jubick, Appellant, *v.* Reitz Coal Company et al.

Argued April 25, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*David L. Ullman* with him *W. Curtis Truxal,* for appellant.

*Francis A. Dunn* with him *Paul E. C. Fike,* for appellee.

OPINION BY DITHRICH, J., July 17, 1947:

Claimant, in this workmen's compensation case, seeks to have set aside a final receipt on the *sole* ground that it was obtained by improper conduct. The referee, the board, and the court of common pleas all ruled against him. Hence this appeal.

Claimant was injured July 10, 1942, when a stump of coal which he was mining fell, pushing him against

a piece of drawslate and fracturing his left leg. On August 19, 1942, a compensation agreement was entered into under which he was paid compensation to and including May 29, 1943. On June 3, 1943, he signed a final receipt wherein he acknowledged that all liability had ceased. On signing the final receipt, he received a check for $113.14 covering compensation for six weeks and two days at the rate of $18 per week, the amount agreed upon.

It is conceded that when he signed the final receipt and cashed the check he knew that it was the last check that he would receive by way of compensation. The only possible ground on which it could "be *conclusively* proved that such receipt was procured by . . . coercion, or other improper conduct . . ." (emphasis added)—a burden placed on claimant by section 434 of the Act of June 21, 1939, P. L. 520, 77 PS 1001—would be by the production of evidence that the employer and/or its insurance carrier deliberately and intentionally withheld compensation until claimant signed the final receipt to which his employer was not entitled. We shall later endeavor to point out that the employer was clearly entitled to the final receipt on the ground that all disability had ceased.

In *Kessler v. N. Side Pack. Co. et al.*, 122 Pa. Superior Ct. 565, 186 A. 404, one of the cases chiefly relied on by claimant, not only was overdue compensation withheld, but there was a threat on the part of the insurance carrier to continue to withhold it unless and until the claimant signed the final receipt.

There is no such proof in the instant case. No representative of either the employer or the insurance carrier was present when claimant received the check and signed the final receipt. According to his own testimony when he inquired about his check he was told by the assistant foreman at the mine that he had left it with a bartender at the hotel operated by the assistant foreman and that he could get it by calling there. He was handed the check

and the final receipt attached to it by the bartender without any comment. Although claimant was illiterate, he fully understood the import of the check and final receipt for he was told by one Zanky, the subscribing witness to his "X" mark, "That is your last check."

When he signed the final receipt, he was back at work in the mine where he had been working since early in May and receiving regular wages. The fact that he was paid compensation for total disability during all the month of May during which period, according to his own testimony, he was only partially disabled, would seem to negative any suggestion that the accumulation of compensation for four weeks beyond the statutory period of two weeks was for the purpose of coercing claimant into signing the final receipt. But, be that as it may, in any event, his proof of improper conduct does not measure up to the standard required. Cf. *Lowdermilk v. Lorah*, 124 Pa. Superior Ct. 356, 188 A. 621; *Cooper v. Byllesby Eng. Co.*, 140 Pa. Superior Ct. 158, 14 A. 2d 222.

He says now that he signed the receipt because "I got to pay insurance, and I got rent, and all them things like that, you know." In his petition to set it aside he said he signed it because "I thought I was better and started to work . . ." He continued to work regularly until about the fifteenth of September, 1943, when he quit work. He filed his petition to set aside the final receipt January 10, 1944. The referee found as a fact ". . . that as of May 20, 1943, the claimant had recovered from the injury he sustained without any further disability."

Counsel for appellant concedes that "If . . . notwithstanding . . . that the final receipt should have been set aside on the ground that it was procured by improper conduct . . . the record contains sufficient competent evidence to sustain the Board's finding that all disability ended on May 20, 1943, the *claimant is still not entitled to relief.*" (Emphasis added.) Appel-

lant's brief, page 18. On the question of the competency of the evidence to sustain the board's finding that all disability ended on May 20, 1943, we quote from the opinion of the learned president judge of the court below: "Turning to the record, it undisputably appears that the claimant had returned to work prior to said date. The finding that the claimant had recovered without any disability as of said date is amply supported by the testimony of Dr. George F. Wheeling, a very able and reputable physician and surgeon, who was the claimant's attending physician after the accident and injury. It is true that Dr. A. C. F. Zobel, the claimant's witness, who did not examine the claimant until November 3, 1943, expressed the opinion, based largely upon the history of the case as furnished by the claimant and certain subjective symptoms, that the claimant has a 25% partial industrial disability for all forms of work. Where there is sufficient competent evidence on which the Referee and the Compensation Board based their decision, it cannot be set aside on appeal even though there was medical testimony, if believed, which might lead to a different conclusion: Bonzani v. Hillman Coal & Coke Co., 150 Pa. Superior Ct. 356, and cases there cited." See also *Wilkinson v. United Parcel Service et al.,* 158 Pa. Superior Ct. 22, 43 A. 2d 408; *Barkus v. Thornton-Fuller Co. et al.,* 157 Pa. Superior Ct. 239, 42 A. 2d 320.

Judgment affirmed.