## McKissick v. Penn Brook Coal Co., Appellant.

Argued April 17, 1933.

Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

*J. Campbell Brandon* of *Brandon, Brandon & Ross,* for appellant.—The time for review or reinstatement of compensation agreements is limited to three hundred weeks in case of partial disability. Zupicick v. Phila. & Reading Coal & Iron Co., 108 Pa. Supreme Ct. 165; Wyinskie v. P. & R. C. & I. Co., 95 S. C. 170; Ludington v. Russell Coal Mining Co., 90 S. C. 318.

*Joseph H. Cochran,* and with him *Thomas H. Greer, Jr.,* for appellee.

OPINION BY PARKER, J., October 9, 1933:

The referee in this workmen's compensation case, on the petition of the plaintiff, set aside a final receipt on the ground of a mistake of fact and awarded compensation for partial disability. This action was sustained by the board and court of common pleas. The questions raised on this appeal are whether there was a mistake of fact and, if so, whether the petition for reinstatement was presented within the time limited by law.

The claimant, Charles A. McKissick, was injured on November 30, 1923, while in the course of his employment as a coal cutter with the Penn Brook Coal Company. An open agreement was entered into in which it was stated that the claimant was injured by being struck by an empty car which ran down a slope in the mine and caught and injured him, resulting in a "slight concussion of brain and partial dislocation of right shoulder." On January 9, 1924, claimant returned and was employed at light work for a few days and then continued to work at his former wage and regular occupation until October, 1927. On January 28, 1924, he executed a final receipt and compensation was paid to January 9, 1924. In October, 1927, he suffered the first of a series of convulsions, but in the spring of 1928 returned to the defendant company and secured lighter work at a less wage. On April 15, 1931, a peti-

tion for reinstatement of the compensation agreement was filed. At a hearing before the referee, testimony was produced showing that McKissick had suffered from convulsions since 1927. An X-ray was taken for the first time when it was discovered that instead of suffering a slight concussion at the time of the accident, there had been a depressed fracture of the right frontal bone and a fracture at the base of the skull.

The defendant did not call any witnesses at the hearing before the referee, and there was not any dispute as to the facts, the employer depending upon its interpretation of the Workmen's Compensation Act. The referee after finding the claimant had suffered the injuries to the skull which we have referred to above and which were unknown at the time the final receipt was signed made the following findings as to the result of the injury: "It is our opinion that the claimant at the time the final receipt was executed in this case had not recovered from the accident. He had lost the hearing of his right ear, was still suffering pain in the head, which naturally followed such a fracture as he sustained and which continued up to the present time and it is our opinion that while this was not reflected in his earnings while working for the defendant until October 23, 1927, yet we are of the opinion that during this time he had a real disability and was laboring under a great handicap and that his earning capacity in the open competitive field of labor was affected and reduced and that since he has developed these traumatic convulsions as a result of the injury, his earning capacity has been greatly affected but it is our opinion that the claimant has not shown such facts as to warrant us in finding that he has been totally disabled at any time since the execution of the final settlement receipt." He concluded that the claimant was entitled to an award for compensation beginning October 24, 1927. The board approved the findings of fact and conclusions of law of the referee.

Technical rules of pleading do not apply to these proceedings: Gairt v. Curry Coal Min. Co., 272 Pa. 494, 116 A. 382. We will, therefore, consider the pleadings in a light most favorable to the claimant. The claim cannot be sustained under the first paragraph of Section 413 of the Workmen's Compensation Act, because that paragraph applies only to existing compensation agreements: Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 168, 164 A. 731. On the other hand, if the application to reinstate is treated as if made under the second paragraph of that section, then it comes too late because it was not filed with the board within one year after the date of the last payment of compensation: Act of June 2, 1915, P. L. 736, Art. IV, §413, as amended by Act of April 13, 1927, P. L. 186, §6 (77 PS 772). This leaves for consideration the question as to whether the petition may be maintained under §434 (77 PS 1001). If it is presented under that section it can be maintained only by showing that the final receipt "was procured by fraud, coercion, or other improper conduct of a party or is founded upon a mistake of law or of fact," and it must have been on account of a fact existing at the time the receipt was signed.

We agree with the compensation authorities and the lower court in their conclusions that there was a mistake of fact within the meaning of the compensation law. The final receipt was based upon the assumption of fact that the injury to the claimant consisted of a partially dislocated shoulder and a slight concussion of the brain. At that time, however, under the findings of the referee approved by the board, the claimant actually had a depressed fracture of the right frontal bone and another fracture at the base of the skull, and these injuries later resulted in bone adhesions and the formation of scar tissue and rendered the claimant deaf in his right ear. It was further found that plaintiff was partially disabled when the final receipt was exe-

cuted, and such disability continued up to the time of the order. The mistake was as to a fundamental fact which formed the basis of the action of the parties with reference to the final receipt. The resulting disability was not a recurrence or a later development of an injury assumed to exist at the time the receipt was signed, but such disability was the result of fractures of the skull not known to exist until the X-rays were taken. The fractures of the skull were also facts existing at the time the final receipt was signed, and it was as to such facts that the mistake was made. The mistake was as to an objective physical fact.

Assuming that the final receipt was founded upon a mistake of fact, as we believe it was, the petition for review was filed too late. The fact-finding body found from competent evidence that there was partial but not total disability, and the application was not presented within the period of three hundred weeks after the partial disability began. §306 (b) of Act June 2, 1915, P. L. 736, as amended by Act June 26, 1919, P. L. 642 (the amendment of this section by the Act of 1927 did not apply to injuries occurring before December 31, 1927), provided with reference to partial disability that the compensation should "be paid during the period of such disability; not, however, beyond three hundred weeks after the tenth day of such partial disability." It has been uniformly held by the Supreme Court and this court that a petition for modification, which before the amendment of 1927 had no prescribed limit, must be presented within the time that the agreement has to run. In the case of Gairt v. Curry Coal Min. Co., supra, it was said (p. 496) : "The act gives to the board jurisdiction over an agreement for purposes of review, at any time during the life of the agreement, or during the period of time it has to run." In the case of Zupicick v. P. & R. C. & I. Co., supra, we said (p. 172) : "As to partial disability the law fixes a limit of compensation of 300 weeks, and the jurisdic-

tion of the board for the purposes of review in cases of partial disability would accordingly be limited to 300 weeks, which is the time 'the agreement or order has to run,' under the law, in cases of partial disability." Also, see Ludington v. Russell Coal Min. Co. and State Workmen's Insurance Fund, 90 Pa. Superior Ct. 318; Johnson v. Jeddo Highland Coal Co., 99 Pa. Superior Ct. 94; and Wyinskie v. P. & R. C. & I. Co., 95 Pa. Superior Ct. 170.

The referee found that the claimant, at the time the final settlement receipt was executed, had not recovered from the accident, that he had lost the hearing in his right ear, was still suffering pain in his head, and in that connection said: "While this was not reflected in his earnings while working for the defendant until October 23, 1927, yet we are of the opinion that during this time he had a real disability and was laboring under a great handicap and that his earning capacity in the open competitive field of labor was affected and reduced." The final receipt was not signed until January 28, 1924, while payment of compensation ended and he returned to work on the 9th day of the same month. Consequently, the partial disability may have begun at an earlier date than that on which the final receipt was signed. It is most apparent that the partial disability began at a date not later than the 28th day of that month. Such being the case, the period of three hundred weeks during which the defendant was liable to the plaintiff for compensation expired more than a year prior to April 15, 1931, when the petition for reinstatement was presented. We note in passing, in order that we may not be misunderstood, that this period of three hundred weeks mentioned in §306 (b) is to be reduced by the number of weeks during which compensation was paid for total disability. In view of the time that elapsed before the petition for relief was presented, it is not important to determine now the exact date at which partial disability began. The case

of Ludington v. Russell Coal Co., supra, is not controlling in this case as the Ludington case was decided on the law as it stood prior to the amendments of 1919. That statute substituted the word "partial" for "total" as the time from which the three hundred weeks should run.

The court below in arriving at its conclusions relied very largely on the case of Ancello v. Elk Tanning Co., 88 Pa. Superior Ct. 353. We do not find any inconsistency between the conclusions at which we have arrived and those stated in the opinion in that case, which was decided before the amendment of 1927. An examination of the Workmen's Compensation Act will disclose a very definite intention on the part of the legislature to treat compensation for eye injuries differently than that for total or partial disability. Before and after the amendment of 1927 (P. L. 186) compensation for total disability (§306 a) was for the first five hundred weeks after a certain day of total disability, and compensation for partial disability (§306 b) was not to be paid "beyond three hundred weeks after the seventh [by prior act, tenth] day of such partial disability." In the case of compensation for the loss of an eye, the period is fixed at 125 weeks just as it was in the case of total and partial disability for 500 weeks and 300 weeks respectively, without regard to the disability created or its effect on earning capacity and without mentioning the fact that compensation is only to be paid for the first 125 weeks or not beyond 125 weeks. There are also provisions with relation to partial and total disability fixing the aggregate of payments, and in the case of total disability deductions are made for the payment of partial disability, and in the case of partial disability deductions are made for the payment of total disability. The decisions of both appellate courts have recognized this distinction and placed eye injuries in a different category.

We again call attention to §427 of the Workmen's

452

Compensation Act, as amended by the Act of June 26, 1919, P. L. 642, §6 (77 PS 878), wherein it is provided that the court of common pleas when affirming an order of the board or referee must enter judgment for the total amount stated by the award or order, to be payable whether then due and accrued or in future installments. The lower court in entering judgment simply affirmed the conclusions of law and award of the referee and Workmen's Compensation Board. In view of the conclusions at which we have arrived, this error does not affect the judgment to be entered.

The order of the court below is reversed, and that court is directed to enter a judgment for the defendant.