Shetina *v*. Pittsburgh Terminal Coal Corporation, Appellant.

Argued April 11, 1935.

426

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Sidney J. Watts,* of *Baker & Watts,* for appellant.

*Murray J.* and *Fred J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1935:

This is the second appeal by the employer in this workmen's compensation case and the only question of law now involved is whether there was legally competent evidence to sustain the finding of the board that the final receipt given by the claimant on October 7, 1929, was not only founded upon a mistake of fact but also procured by improper conduct upon the part of the employer's representatives.

If there was such evidence, the judgment of the court below, entered on February 4, 1935, upon the award of compensation by the board and here appealed from, must be affirmed.

While in the course of his employment in one of appellant's mines, claimant was accidentally injured on July 26, 1929.

An open agreement for compensation for total disability at the rate of $13 per week was promptly exe-

cuted, and approved by the board. The description in the agreement of the accident and injury reads: "Loading coal in car and motor pushed loaded car against car he was loading and injured was squeezed between car and face of coal. Bruised pelvis and rt. arm."

Compensation was paid under the agreement until October 7, 1929, when the claimant signed the final receipt upon which the employer relies to defeat any claim for further compensation.

It purports to be a receipt for all sums due claimant "for all injuries received" in the accident of July 26, 1929, and contains the statement that he "returned to work on the 7th day of October, 1929, at a wage of $20 per week."

With reference to the work actually done by claimant (and the circumstances under which it was performed) between the date of the receipt and September 14, 1932 —the next important date in the history of this case— we adopt these excerpts from the opinion of the court below as fully supported by the evidence: "This injured man was placed immediately under the care of Dr. H. S. Lake, who is the company doctor. This doctor treated the claimant at his home for several weeks, and on October 7, 1929, reported he was able to do some form of light work. ...... As a matter of fact, this claimant did not and could not return to work on October 7, 1929, at a wage of $20 per week, but to the contrary did continue under the care of doctors selected by the defendant, to wit: Dr. J. P. Kerr and Dr. H. S. Lake. ...... At the defendant's behest and the direction of their Dr. Kerr, he returned in December, 1929, to work, and was given a light job known as 'picking boney.' This work he attempted to do, by supporting himself with one hand and cleaning coal with the other, with considerable pain and discomfort. After a few weeks, he was transferred to his old job loading coal, which he did by working a few minutes and resting,

with continuous pain in the right hip and across the back and spine. This work he did at very irregular intervals and with the help of others [until May 31, 1931]."

On September 14, 1932, nearly three years after the last payment of compensation, claimant filed with the board his "Petition for Review and Reinstatement of Compensation Agreement," assigning the following grounds therefor: "At the time I signed final receipt I did not know the extent of my injuries. I was still disabled and did not know what I was signing, nor was it explained to me. I returned to work because defendant's representatives ordered me to do so, even though I was still disabled and worked in pain until unable to continue. ...... My disability has been continuous and I did not seek to have compensation reinstated because of my ignorance of the law. I am permanently crippled and disabled as a result of my injuries of July 26, 1929."

An answer was duly filed by appellant, the material paragraph of which reads: "(3) It is denied that the agreement should be reviewed as prayed in the said petition for the following reasons: First, the claim is barred by the statute of limitations governing such cases. Secondly: Shetina had no disability at the time he signed his final receipt. If he had he could not have worked."

In December, 1932, a hearing was had before a referee at which testimony was submitted upon both sides. The referee made, and the board upon appeal affirmed, a finding to the effect that the final receipt should be set aside upon the ground that it was founded upon a mistake of fact; the award, as made by the board was for partial disability at the rate of $3.25 per week from October 7, 1929, to May 31, 1931—the period during which claimant earned some wages—and for total disability at the rate fixed in the agreement ($13 per

week) from May 31, 1931, until disability should change, all, however, within the terms and limitations of the statute. Upon appeal by the employer to the common pleas, judgment was entered upon the award and the first appeal to this court followed.

No specific findings of fact had been made by the referee or board which would justify the conclusion that the agreement or the receipt had been founded upon a mistake of fact. It was clear from the language of the board that it assumed that no answer had been filed to the petition for review and that everything averred therein should therefore be taken as admitted by the employer.

In the course of its opinion the board said: "Since there has been a mistake of law or fact claimed by the claimant and this is not denied by the defendant, we are compelled to sustain the findings of the referee that it was a mistake, and that the final receipt should be set aside."

At the oral argument of the appeal in this court it was demonstrated to our satisfaction that the referee had failed to include the answer in certifying the record to the board. We, accordingly, made an order on April 21, 1934, directing that the original answer be added to, and become a part of, the record in this court.

In an opinion filed by Judge KELLER for this court on July 13, 1934, (114 Pa. Superior Ct. 108, 173 A. 727) it was held that it was necessary to reverse the judgment then before this court and have the record returned to the board "because of the failure of the referee in making up the record for transmission to the board, on appeal, to include in it the answer filed by the defendant; which led the board to assume that the relevant and material averments in the claimant's petition to review and reinstate his compensation agreement were not denied, and were therefore admitted (Act of June 26, 1919, P. L. 642, sec. 416, p. 662);

whereas the material averments, on which the prayer
for relief was based, were denied, and it was the duty
of the board on appeal to find the facts from the evi-
dence in the case, and not to assume them from the
pleadings."

As expressly stated in that opinion, we did not at that
time give any consideration to the evidence; the appeal
was disposed of solely upon the ground indicated.

The opinion of the board brought up upon the first
appeal indicated that it had considered the petition for
review as though filed under the first paragraph of
Section 413 of the statute, as amended by the Acts of
April 13, 1927, P. L. 186, 194, and June 26, 1919, P. L.
661.

That paragraph was not applicable. We have held
repeatedly that it applies only to existing agreements:
Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct.
165, 164 A. 731. The agreement in this case had been
terminated by a final receipt.

Claimant's petition of September 14, 1932, purported
to seek relief under Section 413. Neither paragraph of
that section was applicable to the real purpose of the
petition. In the course of the opinion Judge KELLER
said: "Considered as a petition to review under para-
graph 2 of section 413, it was filed too late (Act of
April 13, 1927, P. L. 186, sec. 6, amending sec. 413, p.
195); but the relief he really sought was to set aside
the final receipt under section 434, and construing the
petition in the liberal and humanitarian viewpoint in-
tended by the legislature, we shall so consider it."

In the latter part of the opinion we indicated to the
board wherein it had failed in the performance of its
duty and in order to guide and assist it in the proper
disposition of the case, upon the return of the record,
said:

"It was the duty of the board to find the facts from
the evidence taken before the referee, or additional tes-

timony if deemed necessary, and decide whether the facts so found warranted the conclusion that the final receipt had been signed by mistake within the meaning of that term as construed by the courts.

"That does not mean that if, without fraud or coercion on the part of his employer or his representative, an employee signs a final receipt believing he has recovered from his disability, and it subsequently develops, but more than a year thereafter, that his disability recurs, there is such a mistake of law or fact as entitles him to set aside a final receipt and reinstate the compensation agreement. Such a case comes squarely within the second paragraph of section 413 as amended by the Acts of 1919 and 1927, and action is barred if the petition is filed more than a year after the final receipt was signed: Bucher v. Kapp Bros., 110 Pa. Superior Ct. 65, 167 A. 652."

To the Bucher case may be added Reichner v. Blakiston's Son & Co. et al., 115 Pa. Superior Ct. 415, 422, 175 A. 872, where we said: "A mere mistaken belief upon the part of an employee and his employer at the time an agreement is terminated by a final receipt that the employee may return to work without danger of any recurrence of disability is not the kind of a mistake of fact contemplated by Section 434."

In order that the board might have concrete illustrations of what, in our opinion, amounts to such a mistake of fact, or improper conduct, as would justify the setting aside of a final receipt, we added: "But if, for example, both parties were under the impression that the injury consisted of a blow on the head, causing slight concussion of the brain, and it subsequently developed that the skull was fractured, causing total disability over a year after the final receipt was signed, but within 500 weeks of the award of compensation (McKissick v. Penn Brook Coal Co., 110 Pa. Superior Ct. 444, 168 A. 691) that would be a mistake within the

meaning of the act. So if compensation was claimed and allowed for an injury to the right side and afterwards it developed that in the same accident injury had been inflicted to the left hip, which had been overlooked by both the claimant's doctor and the employer's doctor, which later resulted in total disability (Yanasavage v. Lehigh Navigation Coal Co., 112 Pa. Superior Ct. 479, 171 A. 404), that too would be a mistake within the act. Or if any fraud, coercion or other improper conduct was practiced by the company's agents or physician, which induced the signing of the final receipt by the claimant when he was in fact still suffering disability (Palino v. Hazle Brook Coal Co., 112 Pa. Superior Ct. 15, 19, 171 A. 82) that would justify the setting aside of a final receipt more than a year after it had been signed. The 'mistake of fact' contemplated by the act refers to a fact which existed at the time the final receipt was signed: (Busi v. A. & S. Wilson Co., 110 Pa. Superior Ct. 95, 99, 167 A. 655); not to a subsequent development from an injury which was thought to be healed, or to claimant's own belief that his disability had ceased, which was later disproved by the subsequent course of events."

We have quoted thus at length from our former opinion because of the apparently general misunderstanding upon the part of referees of the kind of evidence required to establish the existence of such a mistake of fact as would warrant the review, modification or setting aside of an existing agreement or the setting aside of a final receipt.

In returning the record, we instructed the board to determine "whether the evidence taken, or which may be taken, brings the case within the class of mistake of law or fact, or shows only a recurrence of disability provided for under paragraph two of Section 413."

Upon the return of the record to it, the board, deeming it unnecessary to take any additional testimony,

set aside on September 20, 1934, the findings of fact, conclusions of law and award involved in the first appeal and made new and specific findings.

With respect to the issue whether the final receipt was founded upon a mistake of fact the sixth finding reads: "6. On July 26, 1929, a motor pushed a loaded car against the claimant, squeezing him between the car and the face of coal, causing not only a bruised pelvis and right arm, as stated in the agreement, but also a crush fracture of the first, second and fifth lumbar vertebrae, and a forward dislocation of the fifth vertebrae carrying the spine with it. To this extent the agreement and final receipt were executed in mutual mistake of fact with respect to the injuries actually sustained. Furthermore, these injuries were imposed upon a latent hypertrophic osteoarthritis, aggravating and accelerating this disease, resulting in an almost complete ankylosis of the hip on the right side."

Other pertinent excerpts from the findings of the board were:

"The claimant was immediately attended by Dr. H. S. Lake. Dr. Lake's examination at the mine did not reveal any fractures, and he had him removed to his home. The claimant was confined there for several weeks, when he gradually got around on crutches and finally with the aid of a cane. On October 7, 1929, Dr. Lake reported that the claimant could return to some form of light work ......

"During the month following the claimant reported at defendant's office in the Wabash Building in the City of Pittsburgh, to inquire about his compensation. On December 5, 1929, he was referred to St. Joseph's Hospital for physical and X-ray examination by Dr. J. P. Kerr. Dr. Kerr found the claimant complaining of pain in the right side, back, and right hip, with considerable atrophy of the right leg and thigh, and by X-ray, with marked low grade bony changes involving

the jaws of the lumbar vertebrae, particularly the first, second and third, indicative of a chronic hypertrophic spondylitis. Dr. Kerr thought at that time that the claimant was partially disabled.

"Two weeks later the claimant again returned to defendant's office at Pittsburgh, but was told by the clerk that Dr. Kerr had said that he was able to go back to work loading coal and that he would not receive any more compensation. He then appealed to Dr. Lake, the company physician, and was advised to go back to the mine and see if they had some light work. The claimant did so and was given work picking boney."

We have heretofore referred to the manner in which claimant was obliged, by reason of his injuries, to do his work. The conclusion of the board was that claimant had a twenty-five per cent partial disability from October 7, 1929, to May 31, 1931, when the mine was closed by a strike, and was totally disabled from that date. It accordingly made an award similar in terms to the original award and the court below, upon the employer's appeal, entered judgment thereon.

We find no fault with the procedure followed by the board subsequent to the return of the record; it was at liberty, but not required, to take additional evidence.

Upon an examination of the record, we are satisfied there was competent evidence to support the above quoted findings of fact of the board, relative to claimant's physical condition prior to the date of the accident and the extent of his injuries. There was some contrariety of opinion between the medical experts, but it was the duty of the board to weigh their testimony and reconcile it where possible.

The conclusion fairly deducible from the evidence is that neither upon the date of the execution of the agreement nor at the time of the signing of the final receipt was the full extent of claimant's injuries known either to the representatives of the employer or to the claim-

ant. The subsequent taking of X-ray pictures, in December, 1929, and shortly before the hearing, disclosed that claimant instead of having merely suffered a "bruised pelvis and right arm," as set out in the petition, had really suffered, in the language of Dr. W. O. Markell, "a crushed fracture of the first and second lumbar and the fifth lumbar [and that] the fifth vertebrae was dislocated forward on the sacrum carrying the rest of the spine with it." It is clear, from his own testimony, that these fractures were not discovered by the physician of the employer who attended claimant immediately after the accident. In our opinion, these circumstances bring this case squarely under our decisions in McKissick v. Penn Brook Coal Co., and Yanasavage v. Lehigh Navigation Coal Co., supra, and justify the setting aside of the final receipt upon the ground that it was founded upon an existing mutual mistake of fact upon the part of the claimant and the representatives of the employer. We think the evidence for the claimant was sufficient in quality and quantity to overcome the prima facie effect of the receipt.

Having reached this conclusion upon the main branch of the case, it is not necessary to consider in detail the additional finding of the board that the receipt was also procured by improper conduct on the part of the representatives of the employer. It is sufficient to say that the evidence indicates that the employer was not justified in averring in its answer, on September 26, 1932, that claimant had no disability when he signed the final receipt, nor was it warranted in attempting to stand upon that receipt. Granting that the representatives of the employer did not know the extent of claimant's injuries when they obtained the receipt, they acquired that knowledge long before the filing of the petition to set it aside. At the time of the hearing they knew the statement in the receipt that claimant had returned to work in October, 1929, "at a wage of $20 per week" was

not true. The testimony at the hearing showed conclusively that claimant had never been free from serious disability since the accident and that he was then totally disabled. His was not a case of recurrent, but of continued and progressive, disability. The only controversy was whether his disability was attributable to an aggravation of his pre-existing arthritic condition by the accident, or to the natural progress of that disease. As there was evidence to support the finding of the board that the accidental injuries had materially aggravated, and accelerated the progress of, the disease, that finding may not be disturbed by either court.

The uncontradicted testimony is that the "prognosis is poor," but if claimant's present disability should decrease or cease, appellant has its remedy under the statute.

Judgment affirmed.