## Borzor *v.* Alan Wood Steel Company, Appellant.

Argued December 13, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*E. Arnold Forrest,* for appellant.

*Edwin J. McDermott,* with him *Therman P. Britt* and *William Charles Brown,* for appellee.

OPINION BY JAMES, J., January 27, 1938:

On April 28, 1931 claimant, while employed as a painter by the defendant employer, sustained an injury, described in a compensation agreement, executed May 20, 1931, as follows: "Wrenched shoulder due to scaffold being jarred causing man to grab nearest support." On August 22, 1931, claimant executed a final receipt, which recited, "My disability began on the 28th day of April, 1931 and I was able to return to work on the 22d day of August, 1931 at a wage of $30.00 per week." On August 29, 1935 claimant filed a petition to set aside the final receipt for the following reason: "The final receipt referred to was signed under mistake of fact, in that the disability resulting from the accident on April 28, 1931, existed on that day and still exists, although claimant, on August 22, 1931, was convinced that it did not." The employer filed an answer denying that there was any disability, resulting from the accident, on August 22, 1931, or any time subsequent thereto, or that claimant signed the final receipt under a mistake of fact. After hearing, the referee found: "(1) That at the time of the signing of the final receipt,

the claimant was under a mistake of fact in that he was not fully aware of the true condition of his arm," and awarded compensation for partial disability from the date of the signing of the final receipt until April 28, 1935, and for total disability from that time until claimant's disability should cease or change in extent. On appeal to the Workmen's Compensation Board, the findings of the referee were sustained, and, later, affirmed by the court of common pleas. From the judgment entered on the award, this appeal was taken.

To set aside a final receipt, upon the ground of mistake of fact, under section 434 of the Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642, 77 PS §1001, the burden of proof is upon the claimant, and the mistake must be as to a fact existing at the time the receipt is signed, and not to a subsequent development from an injury which was thought to be healed, or to claimant's own belief that his disability had ceased, which was later disproved by the subsequent course of events: *McKissick v. Penn Brook Coal Co.*, 110 Pa. Superior Ct. 444, 168 A. 691; *Yanasavage v. Lehigh Nav. C. Co.*, 112 Pa. Superior Ct. 479, 171 A. 404; *Shetina v. Pittsburgh Ter. Coal Corp.*, 119 Pa. Superior Ct. 425, 179 A. 776; *Graham v. Hillman Coal & Coke, Co.*, 122 Pa. Superior Ct. 579, 186 A. 400; *Williams v. Baptist Church*, 123 Pa. Superior Ct. 136, 186 A. 168.

With these principles in mind, the question for us to decide is whether the record contains competent evidence to warrant the findings of the referee and the board that a mistake of fact existed.

Following the accident, claimant received first-aid treatment at the employer's plant, and on the following day was treated by Dr. Watson, who treated him three or four times a week until a few days before the final receipt was signed, when claimant was told by him that the arm was "all right" and he could return

to work, on the strength of which the final receipt was signed. For six weeks thereafter, claimant was treated by this doctor. Claimant testified that he had applied about fifty bottles of alcohol to his injured arm.

Shortly after the receipt was signed, and at other times, claimant applied at defendant's plant for work but was always refused. Failing to obtain employment from defendant, claimant obtained light work for short periods, at reduced wages, until he entered a hospital for treatment. He had to give up several jobs because he was unable to do the work. During this time he suffered pain in the arm, found it difficult to move or to hold it up, it tired easily and at times became numb. In describing the effect of the accident upon his arm, he testified as follows: "Q. What kind of work have you been able to do since the accident—have you been able to use your arm? A. No. I can only cut about four boards and I can't do it any more. Q. Why not? A. My arm drops down stiff and it's like numb and I can't use it. Q. Can you do painting? A. I can't do it because I can't hold my arm up. Q. Can you use a hammer? A. No. Only with my left hand." One employer, who had given claimant work, testified that he could not produce the work other employees could, and another witness stated that he saw claimant quit his work because his arm hurt. The arm gradually became worse and claimant was examined by several doctors at a hospital, with no satisfaction. On April 26, 1935, he was examined by Dr. Ernest Brav, whose diagnosis was that claimant was suffering from a rupture of the long head of the biceps tendon. This doctor, who operated on claimant's arm, testified: "A. The operation was performed on May 28, 1935, and consisted of exposure of the long head of the biceps muscle of the right arm and of the muscle itself. The origin of the muscle—the long head of the muscle—was found to be completely detached from its normal origin and had

reattached about one inch or so lower on the shaft of the humerus. It was also dislocated from the normal groove it would occupy in the shaft in the humerus. The muscle itself was found to be collected in the lower portion of the arm just above the elbow and was rather adherent to the surrounding structure ......" In his opinion, claimant's condition was caused by the accident of April 28, 1931. According to Dr. Watson, physician for the employer, claimant was suffering from a sprain in the right shoulder, and the arm showed no evidence of a ruptured muscle.

The condition of claimant's arm indicated that it was not the usual case of a sprained shoulder, for which the treatment of bathing with a lotion—prescribed by defendant's physician—followed for months thereafter, would have effected a cure. Claimant's inability to use his arm as he formerly did, coupled with the diagnosis of the operating physician, whose opinion was that the condition of the arm was caused by the accident, justified a finding that not only was the nature of the injury unknown to claimant at the time of the signing of the final receipt, but also to defendant. If the injury, which claimant suffered, was a ruptured tendon, defendant's physician was mistaken in diagnosing the injury as a sprained shoulder.

Whether the testimony of claimant's physician or defendant's was to be believed, and whether the injury occurred at the time of the accident or after the signing of the final receipt were facts to be determined by the compensation authorities. Under the findings, claimant was well within the mistake of fact contemplated under section 434, and as interpreted by our various decisions.

Judgment affirmed.