Dobash *v.* Jeddo-Highland Coal Company,
Appellant.

Argued March 6, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE,
STADTFELD, PARKER, RHODES and HIRT, JJ.

*John H. Bigelow,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., July 19, 1940:

The first question involved upon this appeal in a workmen's compensation case is whether there is competent and substantial evidence upon the record supporting the action of the referee and board in setting aside a final receipt upon the ground that it was founded upon a mistake of fact.

While in the course of his employment as a miner with the defendant company on July 15, 1933, claimant was caught between a mine car and a timber, receiving severe injuries which totally disabled him for some weeks.

An open agreement for compensation for total disability, at the rate of $14.05 a week, was executed. Under it claimant was paid for a period of 6-3/7 weeks, viz., until September 5, 1933, when he returned to work. His injuries were described in the agreement as a fracture of the right arm at the shoulder and fractures of the ninth, tenth and eleventh left ribs.

On September 29, 1933, claimant signed a "Final Settlement Receipt." Subsequently and in order to correct a miscalculation in the method of computing claimant's wages, an amended agreement and receipt were filed. Claimant continued at his employment until February 13, 1934, when total disability developed.

On May 20, 1936, more than two and a half years after the final receipt was signed, claimant petitioned to have it set aside, under the provisions of Section 434 of the Act of June 2, 1915, P. L. 736, as amended June 26, 1919, P. L. 642, 77 PS §1001, and his compensation agreement reinstated.

The referee and board found the receipt had been signed under a mistake of fact, set it aside, reinstated the agreement as of February 13, 1934, the date upon which claimant quit work, and awarded compensation in accordance with its provisions. Upon the defendant's appeal to the common pleas, that tribunal dismissed the appeal and entered judgment upon the award. The present appeal is by the defendant employer from that judgment.

We have frequently pointed out the distinction between the purpose and application of Section 413 of the Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS §772, providing, inter alia, for the reinstatement of an agreement upon the ground of an increase or recurrence of disability, under a petition filed (except in the case of eye injuries) within one year after the date of the last payment of compensation, and Section 434, supra, providing, inter alia, for the setting aside of a final receipt at any time, within the general limitations of the statute, for the reason that it was founded upon a mistake of fact. We are not concerned in this case with Section 413 as the petition was not filed for nearly three years after the execution of the final receipt and was filed, specifically, under Section 434.

We have developed two distinct lines of cases upon the question of what amounts to a mistake of fact within the meaning of the statute—the first illustrating what does not amount to a mistake of fact, and the second what constitutes such a mistake. Primarily, it must be noted that the "mistake of fact" contemplated

by the act refers to a fact which existed at the time the final receipt was signed and not to a subsequent development from an injury which was thought to be healed or to claimant's own belief that his disability had ceased, which was later disproved by the subsequent course of events: *Reichner v. Blakiston's Son and Co. et al.*, 115 Pa. Superior Ct. 415, 422, 175 A. 872; *Lowdermilk v. Lorah*, 124 Pa. Superior Ct. 356, 360, 188 A. 621; *Zavatski v. P. & R. C. & I. Co.*, 103 Pa. Superior Ct. 598, 600, 601, 159 A. 79, and *Eberst v. Sears-Roebuck & Co.*, 334 Pa. 505, 6 A. 2d 577.

The cases in which it was held the claimant had failed to show such a mistake of fact as would justify the setting aside of a final receipt are fully reviewed in the recent cases of *Berkstresser v. State Workmen's Ins. Fund and Monroe Coal Mining Co.*, 140 Pa. Superior Ct. 237, 14 A. 2d 225, and *Cooper v. Byllesby Eng. and Management Co. et al.*, 140 Pa. Superior Ct. 158, 14 A. 2d 222.

Furthermore, the evidence to overthrow a final receipt must be definite and specific and of the required quantity and quality: *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146; *Eberst v. Sears-Roebuck & Co.*, supra.

On the other hand, *McKissick v. Penn Brook Coal Co.*, 110 Pa. Superior Ct. 444, 168 A. 691; *Yanasavage v. Lehigh Nav. C. Co.*, 112 Pa. Superior Ct. 479, 171 A. 404; *Shetina v. Pittsburgh Ter. Coal Corp.*, 119 Pa. Superior Ct. 425, 179 A. 776, and *Borzor v. Alan Wood Steel Co.*, 130 Pa. Superior Ct. 182, 184, 196 A. 532, are illustrations of cases in which it was held that a final receipt was properly set aside because the agreement which it terminated did not cover all of the claimant's injuries nor did claimant know the full extent thereof at the time he executed the agreement or the final receipt. It also appeared that in most of the cases the employer was equally unaware of the existence of

injuries in addition to those set out in the agreement. For instance, in the McKissick case both parties were under the impression that the injury consisted of a blow on the head causing a slight concussion of the brain but it subsequently developed that the skull had been fractured, causing total disability over a year after the final receipt was signed.

In the Yanasavage case compensation was claimed and allowed for an injury to claimant's right side and it afterwards developed that in the same accident injury had been inflicted to his left hip, which later resulted in total disability. In the Shetina case it was assumed the claimant had merely suffered a bruised pelvis and right arm but the subsequent taking of X-ray pictures disclosed he had also received serious injuries to his spine. In the Borzor case the injury was really a ruptured tendon in the arm although the agreement covered only a sprained shoulder.

It is contended on behalf of the present claimant that this case falls within the line of cases to which we have just referred. In the agreement the accident and resulting injuries were thus described: "While running a loaded car to main gangway he was caught between car of coal and broken leg of timber, fracturing right arm at shoulder and 9th, 10th, and 11th left ribs."

The medical evidence supports a finding that in addition to the injuries to his right arm and left ribs the claimant also suffered a severe injury to his left kidney. The existence of this injury was not known to the parties when the agreement was executed and the receipt signed. Claimant was admitted to the hospital upon five occasions. The first was on July 15, 1933, immediately following the accident. When admitted on March 16, 1934, shortly after he quit work, it was found a serious heart condition had developed due to a pre-existing disease of the coronary arteries. Referring to another admission on January 29, 1935, Dr. Dyson, the

medical chief of the State Hospital, called by claimant, testified: "Q. What was wrong with him then Doctor? A. At this time he had a hematuria, that is blood in the urine, pain in the left kidney region and due to physical examination, there was tenderness and a mass found in the left kidney region, the diagnosis was hydronephrosis. Q. Which is what Doctor? A. Which is dilatation of the kidney ......"

Dr. Dyson positively expressed his professional opinion that the "damaged kidney" was present at the time the final receipt was executed. He was corroborated by Dr. Dever, who sent claimant to the hospital.

Dr. Ervin, called by the defendant, testified he examined the claimant in September, 1934, and March, 1936. The results were thus stated by the witness: "The results of the first examination revealed an arteriosclerotic form of heart disease with coronary sclerosis, chronic nephritis, and probably a small calculus in the left kidney. The second examination showed similar findings, the heart disease had become decidedly worse, but his kidney function remained about the same." Although the witness stated he was unable to see any causal connection between the injury and the conditions which he found, and expressed the positive opinion that there was no "association at all between the injury and that heart condition" his cross-examination reads: "Q. Was this man's kidney traumatized in the accident Doctor? A. I think it must have been because he had hematuria soon afterward."

We think the medical testimony upon the record supports the finding of the referee, affirmed by the board, that "claimant was not fully aware of the extent of his disability due to the injured left kidney" when the final receipt was given. The evidence supports the inference that claimant's admitted total disability was not a subsequent development of the injuries set out in the agreement and considered healed when he returned to work,

and the further inference that neither party knew of the existing injury to the kidney either when the agreement was drawn or the receipt executed. Under the circumstances here present, it follows that the receipt was founded upon a mutual mistake of fact and was properly set aside.

The second question is whether the evidence sufficiently shows such a causal connection between the accidental injury to claimant's kidney and his present total disability as to entitle him to compensation from defendant. Its answer to the petition to set aside the receipt was that "whatever infirmities claimant may suffer from are due to natural causes entirely dissociated from injury sustained in line of employment." In other words, defendant's contention is that claimant's present disability is due to an arteriosclerotic form of heart disease with coronary sclerosis and other ailments, all of which had developed over a long period of years.

With relation to the physical conditions which prevent claimant from working, Dr. Dyson testified: "Q. In your opinion is his damaged kidney a marked contributory factor in his inability to work? A. His inability to work is due to *two* conditions, one of which is heart disease and the other is kidney disease, the *heart disease* is very important here and if he had that *alone* he would be unable to work but he also has a severe *kidney disease* which of itself *alone* would prevent him from working also." (Italics supplied.)

This medical testimony is a statement that claimant's disability is due to two conditions, both of which are present and actively contributing to the result. The doctor's statement, that either cause alone would bring about the disability, is not inconsistent with his positive expression of his professional opinion that the kidney condition did and is causing the present disability.

The kidney ailment being one of two concurrent

causes, the presence of other contributing causes does not relieve from liability. Compare Restatement, Torts, Section 432, subsection (2); Section 439. "If two distinct causes are operating at the same time to produce a given result, which might be produced by either, they are concurrent causes. They run together, as the word signifies, to the same end:" *Herr et ux. v. City of Lebanon*, 149 Pa. 222, 226, 24 A. 207.

Appellant relies upon *Gausman v. Pearson Co.*, 284 Pa. 348, 131 A. 247, and kindred cases, such as *Mudano v. Phila. Rapid Transit Co.*, 289 Pa. 51, 137 A. 104, for the proposition that where an injury may be the result of one of two or more causes, for only one of which defendant is liable, the burden is on plaintiff to individuate that one as the proximate cause. The principle of these cases does not apply here where there are two concurrent contributing causes, for one of which defendant is liable. As the present Chief Justice stated in *Gorman v. Charlson et al. (No. 1)*, 287 Pa. 410, 135 A. 250, at page 414: "Where two causes combine to produce injuries a person is not relieved from liability because he is responsible for only one of them [citing authorities]."

The present case is likewise distinguishable from cases where the accidental injury *aggravated* a preexisting ailment or condition; it is not suggested by either party that the accident aggravated in any way the pre-existing heart condition.

Upon a review of the entire record, we are not convinced any of the assignments of error should be sustained.

Judgment **affirmed.**