Federoff *v.* Union Collieries Company, Appellant.

Argued April 10, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Edward J. I. Gannon*, of *Hazlett, Gannon & Walter*, for appellant.

*Irvin M. Ringold*, with him *Arthur L. McLaughlin, Jr.*, for appellee.

Opinion by Hirt, J., October 2, 1940:

Claimant injured his shoulder on June 30, 1936 in the course of his employment and by agreement with defendant was paid compensation for total disability

until September 16, 1936. He then resumed employment with defendant and light work was provided for him until January 1, 1937 when he was transferred to his former work of loading coal. For four days he tried to do the work of a loader. He could shovel coal into the cars but because of his disability was unable to do the drilling necessary to get the coal down or to work with a pick or extend the road and he was then forced to quit work.

Claimant's son was also employed by defendant as a loader. It was usual for loaders to work in pairs and, in the meantime, it was agreed that the son be transferred from night to day work and that claimant be assigned to his son as his "buddy". Claimant pursuant to this arrangement returned to work on February 5, 1937. On February 15, 1937 a supplemental agreement was entered into, providing for payment for total disability for the period ending February 4th, and at the same time defendant employer took a final receipt from claimant in full "for all injuries received ...... on or about June 30, 1936."

Claimant worked with his son under this arrangement until about September 1, 1938, when the son was discharged for violating a rule of the company. During the entire period shoveling the mined coal into the cars was the only phase of the work which claimant was able to do; the son performed all of the more arduous labor. They were on a production basis and the son, because of the unequal division of the work, "checked" about one-third of the production in the name of claimant and the remainder in his own name. Claimant received $1,269.80 in wages for the period. Disregarding an increase in the rate of pay which became effective in the meantime, this was about the same amount which he had earned in a similar period before his injury. After the son was discharged, claimant again tried to do the regular work of a loader for a number of days

but could not, because of his original injury, and when no other loader would agree to work with him as his "buddy" on an arrangement similar to that made with the son and when defendant refused to provide lighter work, claimant was obliged to quit the only work made available to him by defendant.

On August 24, 1938, he filed his petition to set aside the final receipt of February 15, 1937, alleging that he had made an earnest effort to rehabilitate himself but was permanently disabled to the extent that he could not follow his former occupation. The referee, after hearing, found that claimant had not recovered from the injury of June 30, 1936 and "that fact was known to the defendant employer" when the final receipt was taken. Though claimant, also, knew the extent of his disability, the referee set aside the final receipt on the ground that it was executed "under a mistake of fact" and made an award based upon 25% disability from February 5, 1937 to September 1, 1938, and for total disability thereafter. On appeal, the board found "that claimant's accident greatly aggravated a previous arthritis in his shoulder and that the dislocation resulting at the time of the accident was never properly reduced" and concluded that a mistake entered into the giving of the receipt, stating "whether of law or fact, is immaterial." The board classified claimant as a nondescript in the labor market and affirmed the referee's award. The common pleas assumed (contrary to the findings of the compensation authorities) that both parties "had the impression that claimant had fully recovered from the injury" and affirmed the order setting aside the receipt on the ground of mistake of fact, and entered judgment on the award.

Evidence sufficient to set aside a final receipt must be definite and specific and of higher quality and of greater weight than is required to support an award in the first instance. *Eberst v. Sears Roebuck & Co.,*

334 Pa. 505, 6 A. 2d 577. The "mistake of fact" contemplated by the Act, essential to the setting aside of a receipt, must be a mutual mistake as to a fact existing at the time the final receipt was given. *Shetina v. Pgh. Ter. Coal Corp.*, 114 Pa. Superior Ct. 108, 173 A. 727. The difficulty on this phase of the instant case is that there is no evidence to support the finding that a mistake of any kind, either of law or of fact, entered into the giving of the receipt. All the evidence is to the contrary. The injury dislocated and lifted the left clavicle at the outer end, resulting in a permanently abnormal joint. From the date of the accident claimant could not raise his arm above a horizontal position without pain, but he was not wholly incapacitated. He could, within limitations, do much of the work of his former employment as a loader. Both claimant and the employer knew of his condition and of the resulting disability but were able, with the co-operation of claimant's son, to provide employment without loss of earnings, though they both knew there was definite impairment of earning power. The x-ray examination of July 6, 1936 showed evidence of a "mild arthritis" in the shoulder but there is no evidence that this additional fact was not known both to claimant and to defendant. This condition, as indicated by a second examination on September 17, 1938, had been aggravated by the trauma and had shown a marked progression. There is no evidence, however, that claimant's present disability can be attributed to the arthritis as aggravated by the injury, or that his earning power or the amount of work he can perform has been reduced because of it. But even if there were evidence to that effect, the receipt could not be set aside on that ground. "The 'mistake of fact' sufficient to justify the setting aside of a final receipt and the reinstatement of the agreement, if referable to the physical condition of the claimant, must not be one relating to changes which have occurred in his

physical condition since the receipt was signed. Present disability as a consequence of later developments or physical degeneration resulting from the injury is within the limitation prescribed by the Act of 1927 and must be presented as a cause of reviewing and reinstating the agreement [under §413 of the compensation act] within a year after the last payment of compensation": *Berkstresser v. State Workmen's Ins. Fund et al.,* 140 Pa. Superior Ct. 237, 14 A. 2d 225; *Dobash v. Jeddo-Highland Coal Co.,* 141 Pa. Superior Ct. 62, 14 A. 2d 842.

The final receipt was not procured through fraud or coercion, for it was freely given, but we are of the opinion that the circumstances, under which the receipt was taken, as disclosed by the present record, charge the employer with improper conduct, (Act of June 26, 1919, P. L. 642, §434), supplying a valid ground for setting it aside. On reading and rereading the testimony, the determination of the employer to avoid its responsibility under the compensation act, is apparent. For a permanent partial disability compensation was paid for only fifteen weeks and when claimant demonstrated that he was unable to do his former work the employer shifted its responsibility to claimant's son by an agreement under which, working together, the father did only a part of the work of a loader and the son did the rest, including all of the more arduous labor. This arrangement was entirely to the advantage of the employer for claimant and his son were paid not by the hour or day, but on a production basis at the same rate as other workmen. There is no question that claimant was then partially disabled and by this arrangement defendant, for almost two years, was able to avoid its liability to pay compensation. Because the son was willing to do more than his share of the work claimant received about the same amount that he had earned

before his injury. This saving to the company was made in part, at least, at the expense of the son.

The only evidence of the employer's motive in obtaining the receipt is its subsequent conduct. There could be little complaint if, when the son was discharged, defendant had provided lighter work or even if it had been able to assign claimant to some other loader willing to work with him on a similar arrangement without loss of earnings. That defendant was unwilling to assume that responsibility is rather clearly indicated by the record. At the hearing before the referee on the petition to set aside the final receipt, at the close of the testimony of a physician showing a permanent partial disability dating back to the accident, counsel for both parties agreed that claimant should be paid at the rate of $5 a week from September 1, 1938 to November 14, 1938 and that he should return the following day to work on the tipple, picking boney. The employer however refused to perform the agreement and after claimant again demonstrated that he could not do all of the work of a loader, the stipulation was withdrawn. From the attitude of the employer and its treatment of claimant during the entire period, the inference is reasonable that the employer intended to stand on the receipt given by claimant if at any time it should be unable to provide work for claimant without loss to itself. When an employer uses an agreement with another, relieving the employer from paying compensation, as a means of inducing a workman to sign a final receipt, and subsequently refuses to resume payments of compensation after performance of the agreement has terminated, these acts of the employer, unexplained, may be regarded as evidence of improper conduct in securing the receipt. Compare *Graham v. Hillman Coal & Coke Co.*, 122 Pa Superior Ct. 579, 186 A. 400; *Kessler v. N. Side Pack. Co.*, 122 Pa. Superior Ct. 565, 186 A. 404.

These are inferences which appear to be reasonable

from the record before us. The petition to set aside the receipt does not charge improper conduct of the employer as a ground. This, however, does not affect the validity of the petition to raise the issue, (*Szymanski v. Culmerville Coal Co.,* 141 Pa. Superior Ct. 303, 14 A. 2d 565) but since the question is one largely of fact and was not raised before the referee, the defendant should be given an additional opportunity to be heard.

Even though claimant may be found to be entitled to further compensation we are unable to agree that he can be classified as a nondescript and, as such, totally disabled in the contemplation of the compensation law. He is 64 years of age, but appears to be a younger man, and a physical examination indicates that he is normal in every respect except for the injury to his shoulder and the accompanying arthritis. One who can perform even one-half of the arduous labor of a coal loader, ordinarily cannot be classified as a nondescript though labor such as he can perform may not be available generally. In the event of an award, it will be for the compensation authorities to determine the extent of claimant's partial disability.

Judgment reversed and the record remitted to the court below that it may be returned to the Workmen's Compensation Board for such further hearings as may be necessary and for further findings not inconsistent with this opinion.