## Fitzpatrick, Appellant, *v.* Armour Leather Company.

Argued December 16, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*David L. Ullman,* with him *Abraham H. Lipez* and *Lewis G. Shapiro,* for appellant.

*John B. Cupp,* with him *John E. Cupp* and *Clyde E. Williamson,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1941:

The claimant-appellant in this workmen's compensation case alleges in his assignments that the court below erred in sustaining his employer's exceptions to the action of the referee and board in setting aside a final receipt and directing the resumption of payments under an open agreement for compensation for total disability. This appeal is from the judgment entered in favor of the defendant employer.

It is not controverted that claimant, twenty-nine years of age, more than six feet in height, weighing 220 pounds and in good health, sustained an injury by an accident in the course of his employment with the defendant leather company on March 3, 1937. The work in which he was engaged was that of lifting hides out of a vat, loading them on a hand truck, and pulling them to loading bins. After stating he was walking backwards and pulling the truck up an incline constructed of concrete, he thus described the accident: "My foot flew out from under me, and I fell down on the concrete at that time, and when I fell I felt something tear in my back."

On March 24, 1937, an open agreement for compensation, at the rate of $15.00 per week, was executed by the parties and duly approved by the board in which

the description of the accident and resulting injury reads: "While pulling on a truck of leather, feet slipped and he fell to the floor, causing bilateral sacro-iliac sprain—sprained muscles of lower back."

Under this agreement claimant was paid compensation for 3-1/7 weeks in the amount of $47.14. On April 6, 1937, claimant having been advised by Dr. W. E. Delaney, the company doctor, that he would be able to do light work, wearing an orthopedic belt, executed a final receipt terminating the agreement in which it was recited that claimant "was able to return to work on 4/6/37 without any loss of earning power due to aforesaid injuries."

With the assistance of certain electric treatments, administered by Dr. Delaney and other physicians under his direction, claimant was able to continue at light work until March 15, 1938, when he became totally disabled.

On May 18, 1938, more than one year after the last payment of compensation under the agreement, claimant filed with the board, under Section 434 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended June 26, 1919, P. L. 642, 77 PS §1001, a petition to set aside the final receipt. The substance of this petition, as amended, was that claimant had returned to work upon the assurance of defendant's doctor that he was able to do so, although he was continuously suffering from the results of the accident and required a supporting belt, and that the receipt was founded upon a mistake of fact.

The employer, in its answer, denied the then existing disability of claimant was attributable to the accidental injury and also averred that consideration of the petition upon its merits was barred because it had not been filed within one year after the date of the last payment of compensation.

At the hearing before the referee on September 9,

1938, certain facts material to the disposition of this appeal were testified to by Dr. Delaney, the only medical witness called by the defendant. This witness stated he had treated the claimant right along from the time of the accident and upon a number of occasions after he returned to work; that following the accident claimant complained "of pain in the lower part of the back, and both sacro-iliac regions"; that he gave him infra red ray treatments and sent him to Doctor L. E. Wurster for X-rays. Referring to an examination he made on December 14, 1937, after claimant had been at work a number of months, the witness stated claimant "still complained of pain in both sacro-iliac regions," and that he advised him to keep on wearing the belt and go to a Mr. Garvey for electric treatments.

Doctor Delaney made a complete examination of claimant on March 14, 1938. In his direct examination he testified claimant had by that time developed arthritis in the sacro-iliac region. Upon cross-examination, the witness conceded that claimant was totally disabled at the date of his last examination. With reference to the question whether there was a separation of the sacro-iliac joints, Doctor Delaney, during his examination in chief, said: "It seems to me it is a sacro-iliac separation or sprain—whether it is a separation or not—Q. Could it be arthritis? A. Well, he has arthritis there also." An excerpt from the cross-examination of Doctor Delaney reads: "Q. Mr. Cupp (counsel for defendant) has asked you about this widening [at] the sacrum and iliac, while there are cases where there is some widening, but in those cases there doesn't appear a slight irregularity or bony reaction around the articulation? A. No, that is not a separation. That is another thing. That is arthritis. Q. And that appears where there is an injury? A. That is right, inflammation or injury. By the Referee:

Q. This arthritis Doctor you speak of, did that exist prior to the accident? A. No that came on since the accident. Q. Is it due to the accident? A. Well very likely it is. He also had bad tonsils, which of course will keep it up. Q. *Would you say then that the arthritis is due to the injury?* A. *Yes, it is a traumatic arthritis.* Q. And it is really the arthritis that keeps him disabled? A. I think, more than the—personally I don't think he has sacro-iliac separation, but that doesn't say he does not have trouble. He can have trouble whether he has separation or not, he can have pain whether he has separation or not." (Italics supplied.)

We think this testimony of defendant's own witness demonstrates, inter alia, the lack of merit in its contention that claimant's petition was filed too late. If the admitted disability from which claimant was suffering at the date it was filed was a *recurrence* of a disability which immediately followed the accident but had *ceased* by April 6, 1937, the date of the receipt and of the last payment of compensation under the agreement, so that claimant was then, in fact, able to return to his regular or similar work without any loss of earning power, his remedy would have been a reinstatement of the agreement under the second paragraph of Section 413, of the statute, as amended April 13, 1927, P. L. 186, 77 PS §772. Under such circumstances it would have been necessary to file the petition for reinstatement within one year after the last payment of compensation. But defendant, itself, has shown in this case that claimant's disability had not ceased when it procured the final receipt from him; that at that time, and for nearly a year thereafter, claimant was under treatment by its own doctor; and that his earning power was seriously impaired. The statement in the body of the receipt that claimant was "able to return to work ...... without any loss of earning power due

to [his] ...... injuries" was not true and defendant's doctor knew it was not true.

It is impossible to justify and difficult to excuse the procuring, under such circumstances, of the receipt upon which defendant now takes its stand.

The statement of the board, that "this is not a case of recurrence, but of continued and progressive disability," is fully supported by the testimony.

It remains to consider, however, whether the record contains substantial competent evidence supporting the conclusion of the referee and board that the receipt was founded upon a mistake of fact, within the meaning of Section 434 of the statute.

The findings of fact of the referee, adopted by the board, are not as specific as they should have been, but as we understand the theory upon which the setting aside of the receipt is sought to be justified, it is that, in addition to the injuries set out in the agreement, claimant sustained another injury, not included therein and not known to either party, which is largely the cause of the total disability from which he has been suffering since March 15, 1938.

As we read the medical testimony there are here involved three distinct articulations or joints of the sacrum—the bone, in the form of an inverted triangle with the apex pointing downward, which acts as a keystone between the ilia, or expanded blades of the hips, on each side, and which supports the spine at the joint between it and the fifth, or lower, lumbar vertebra, the latter joint being located between the sacro-iliac joints.

As stated, the agreement covers sprains (implying a stretching or tearing of the ligaments) of both sacro-iliac joints, but makes no mention of any injury to the intervening joint between the sacrum and the fifth lumbar vertebra.

Doctor L. E. Wurster, to whom Doctor Delaney referred claimant, was called in behalf of claimant. He

testified that X-rays taken by him a few days after the accident showed a "moderate widening of both sacro-iliac articulations." Additional X-rays were taken on March 15, 1938, the date as of which total disability occurred. These pictures disclosed an injury to the joint between the sacrum and the fifth lumbar vertebra which was not observable at the first examination after the accident. Referring to the X-rays of March, 1938, the witness testified: "The sacro-iliac articulations were wide. It is often difficult to determine from the roentgenograms whether there is definite sacro-iliac relaxation, or whether the widening is normal for the individual. However, for this case these articulations are wider than usual. On the stereoscopic films one could observe slight irregularity and bony reaction around the articulations between the left articular process of the sacrum where it articulates with the adjoining process of the fifth lumbar, which would probably suggest that there has probably been some injury to the articulation. In fact [in] the films taken 3-8-37 this finding could not be observed."

Concerning X-rays taken as late as September 6, 1938, the witness said: "The reaction between the particular processes noted at the previous examination is still present."

In elaboration of the injury to the joint not mentioned in the agreement, Doctor Wurster continued: "Q. And you also said of course in that report that one could observe a slight irregularity in bony reaction around the articulation, between the left articular process of the sacrum where it articulated with the adjoining process of the fifth lumbar. This would suggest that there had been probably some injury to this articulation? A. Yes. Q. That finding also led you to conclude evidently there had been some injury to that? A. The fact that bone reaction appeared between the time of the first examination, and the time

of the second led me to believe that something had happened then that had set up inflammation or irritation which resulted in this bony reaction. Q. The original X-ray was taken Doctor on March 8th, the first one I should say, March 8, 1937. If there had been an injury four or five days before that this slight irregularity and bony reaction would not have arisen as yet would it? A. It would not have appeared in that short length of time. Q. About how long does it take for that to appear? A. You can't tell. Usually a month or two possibly."

Doctor F. H. Paternostro, also called by claimant, testified he had known him for six or seven years and had treated him for minor illnesses prior to the accident, but that he had never had any trouble with his back. From an examination made on March 29, 1938, and attendance upon claimant up to August, 1938, and from a study of the X-rays, this witness expressed his positive opinion that he is totally disabled as a result of the accidental injury to "the left articular process of the sacrum where it articulates with the adjoining process of the fifth lumbar," which the witness described as "usually a stationary joint."

This testimony coupled, as it is, with the statement of defendant's medical expert that the disabling inflammation or arthritis with which claimant is suffering did not exist prior to the accident and was traumatic in its origin, fully sustains the conclusion that claimant at the time of the hearing was totally disabled, and that a major portion of his disability was caused by an injury of the existence of which neither party was aware when the agreement was drawn and executed. We think it equally clear that the "bony reaction," or arthritis, "around the articulation between the left articular process of the sacrum where it articulates with the adjoining process of the fifth lum-

bar" was in progress at the time the final receipt was given.

For these reasons we are unable to agree with the conclusion reached in the elaborate and able opinion of the learned president judge of the court below to the effect that this is a case of recurrence, rather than continuation, of disability.

In the recent case of *Dobash v. Jeddo-Highland Coal Co.*, 141 Pa. Superior Ct. 62, 14 A. 2d 842, which had not been reported when the court below filed its opinion, we had occasion to consider what constitutes a mistake of fact as a ground for the setting aside of a final receipt, and endeavored to classify the decided cases on each side of the line. What was there said need not be repeated. We think the present case is clearly distinguishable from such cases as *Reichner v. P. Blakiston's Sons & Company, et al.*, 115 Pa. Superior Ct. 415, 175 A. 872, where the injury upon which the agreement was based was to the claimant's right leg below the knee, caused by slipping on a stairway, and the disability upon which it was sought to have the final receipt set aside was a heart condition which subsequently developed, and is ruled in favor of the claimant by the class of cases of which *McKissick v. Penn Brook Coal Co.*, 110 Pa. Superior Ct. 444, 168 A. 691; *Yanasavage v. Lehigh Nav. C. Co.*, 112 Pa. Superior Ct. 479, 171 A. 404; *Shetina v. Pittsburgh Ter. Coal Corp.*, 119 Pa. Superior Ct. 425, 179 A. 776, and *Borzor v. Alan Wood Steel Co.*, 130 Pa. Superior Ct. 182, 184, 196 A. 532, cited and digested at pages 65-66 of the Dobash opinion, are examples.

Our conclusion is that assignments Nos. 1, 2 and 4 must be sustained; that the agreement should be reinstated, and that judgment should be entered thereon in favor of claimant (in the manner indicated in *Graham v. Hillman Coal & Coke Company*, 122 Pa. Superior Ct. 579, 186 A. 400, and *Gardner v. Pressed Steel*

*Car Company et al.,* 122 Pa. Superior Ct. 592, 186 A. 410), for payments beginning as of March 15, 1938.

Judgment reversed and record remitted to the end that judgment may be entered in favor of appellant in accordance with this opinion.