Berkstresser *v.* State Workmen's Insurance Fund et al., Appellants.

Argued April 18, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*S. H. Torchia,* with him *Ralph H. Behney,* and *Claude T. Reno,* Attorney General, for appellants.

*George Jerko,* for appellee.

OPINION BY KELLER, P. J., June 24, 1940:

By the Act of April 13, 1927, P. L. 186, amending the Workmen's Compensation Act of 1915, P. L. 736, as amended in 1919, (Act of June 26, 1919, P. L. 642), section 413 which gave the board power to review, modify or reinstate compensation agreements and awards on proof that the disability of an injured employee had increased, decreased or recurred, etc., was modified so as to provide, "Except in the case of eye injuries, no agreement or award shall be reviewed, or modified, or reinstated unless a petition is filed with the board within one year after the date of the last payment of compensation, with or without an agreement."

This put a limitation of one year after the date of the last payment of compensation, as the period within which an agreement or award of compensation for any injury, except an eye injury, could be reinstated because of a recurrence of disability or change in the employee's physical condition, resulting from the accidental injury. It is a statute of repose enacted to suppress fraudulent and stale claims, but it applies with equal force to meritorious claims, if they fall within its provisions. In such case, the individual meritorious claimant suffers because of the general statute designed to prevent the presentation of fraudulent claims.

The present case, in our opinion, is an illustration of a meritorious claim barred by the statute.

The claimant, John Berkstresser, was employed by the defendant, Monroe Coal Mining Company, as a coal loader. On April 25, 1931 he was caught between a car

and a rib of coal and was badly hurt. On May 20, 1931 an open compensation agreement for total disability was entered into between claimant and the State Workmen's Insurance Fund providing for the payment of the maximum of $15 per week, beginning May 2, 1931, until terminated by final receipt or supplemental agreement, approved by the board. In this agreement, the accident and resulting injury were described as follows: "Placing cars in mine and was caught between car and rib. Fracture 4th lumbar vertebra—right. Fracture of descending [pelvic] ramus—right. Slight separation right sacroiliac joint." At the time the agreement was entered into, claimant was in the hospital, where he remained for a period of sixty-two days following the accident and where a full and complete examination of his injuries was made. The record would seem to show that an X-ray picture was taken of them.

On November 12, 1931 a supplemental agreement was entered into between the parties, setting forth that the status of claimant's disability had changed on September 14, 1931, when he went back to work at the weekly wage of $25.14—his regular, normal weekly wage had been $35.82. It was agreed that his disability had changed as of September 14, 1931 from total to partial, and, as 65% of his loss of wages amounted to $6.94, that from that date he should receive $6.94 per week until terminated by a further supplemental agreement or the execution of a proper final receipt showing that disability had entirely ceased.

On December 15, 1931 claimant signed a final receipt, approved by the board, setting forth that on December 5, 1931 he had returned to work at full former wages, and acknowledging the receipt from the State Workmen's Insurance Fund "of $55.58, being the final payment of compensation due me under the Workmen's Compensation Law for all injuries received by me on or about the 25th day of April 1931, while in the employ of

Monroe Coal Mining Company, making in all, with the payments heretofore received by me, the total sum of $370.58, covering a period of 31 weeks" [see p. 8a].

Claimant worked at full wages for nearly *six years,* or until August 17, 1937, when his condition became such that he was disabled from working further, and he will continue to be totally disabled unless or until an operation is performed fusing the fifth lumbar vertebra and the sacrum, after which he would be enabled to work. For over four of these six years claimant worked at loading coal on cars, the same work he did before the accident.

On September 5, 1937 claimant filed a petition asking the board to set aside the final receipt of December 15, 1931 under section 434 of the Act, for the following reason: "At the time I signed the final receipt I had not fully recovered, but at that time my disability was partial in character and continued to be partial in character until August 17th, 1937, when said disability again became total and total disability still exists as the result of my injury in 1931."

The State Workmen's Insurance Fund filed an answer denying the averments in the petition and that he was entitled to any further payment of compensation. It denied (although it was not specifically charged) that said final receipt was secured through fraud, coercion or other improper conduct, or founded upon a mistake of law or fact such as would entitle claimant to have the final receipt set aside under section 434; and specifically asked for the dismissal of the petition for the reason that it was not filed within one year after the last payment of compensation.

After hearing, the referee found, *inter alia,*

"Sixth: From all this evidence your referee now finds as a fact that claimant is now totally disabled and has been since August 17th, 1937. This total disability may continue indefinitely unless there is operative procedure

to correct the deformity by way of a fusion of the lumbosacral joint.

"Seventh: Your referee also finds that at the time claimant signed the final receipt he was still partially disabled, although he returned to work and had no loss in earnings until August 17th, 1937. Under these circumstances your referee believes and so finds as a fact that claimant signed the final receipt in mistake of fact and has relief under section 434, Article IV, of the Workmen's Compensation Act of 1915, as amended."

On appeal to the board, that body affirmed the referee's findings, etc., adding further: "Moreover, the conclusions fairly deducible from the evidence is that at the time of the signing of the final receipt, the full extent of claimant's injuries was known neither to the claimant nor the defendant and that a mutual mistake of fact had been made by the parties. We therefore are of the opinion that the circumstances existing in the instant case justify the setting aside of the final receipt upon the ground that it was founded upon an existing mutual mistake of fact by the claimant and the representative of the defendant; and that the referee was justified in so finding by the quality and quantity of the evidence produced before him."

We have carefully read the evidence in the record and there is nothing in it to support a finding that the final receipt "was procured by fraud or other improper conduct" of the employer or the insurance carrier; nor did the referee or the board make any such finding. The following testimony, elicited on cross-examination of the claimant conclusively rebuts any such contention.

"Q. Now, Mr. Berkstresser, at the time you signed this final receipt, nobody prevailed upon you to sign it against your will, did they?

"A. No.

"Q. You realized at the time you signed it that you would not get any more compensation?

"A. It was not my intention when I signed that re-

lease to get any more compensation again.

"Q. In other words, you signed it on the basis that you were able to return to work?

"A. Yes.

"Q. And you did return to work?

"A. I returned to work."

The only other ground for setting aside the final receipt under section 434 is that it was "founded upon a mistake of law or of fact."

We have read and re-read the testimony from this standpoint and can find no substantial competent evidence in it that would support such a finding. Certainly there is no evidence whatever of any mistake of law. As to mistake of fact, we have pointed out many times that a mistaken belief on the part of an employee that he has fully recovered from the accident and the injury resulting from it, or a hope on his part that he could go back to work—where it subsequently develops, but more than a year thereafter, that his hope or belief was unfounded and his disability recurs—is not such a mistake of fact as will justify setting aside a final receipt: *Shetina v. Pittsburgh Term. Coal Corp.*, 119 Pa. Superior Ct. 425, 431, 179 A. 776; *Lowdermilk v. Lorah,* 124 Pa. Superior Ct. 356, 360, 188 A. 621. "A mere mistaken belief upon the part of an employe and his employer at the time an agreement is terminated by a final receipt that the employe may return to work without danger of any recurrence of disability is not the kind of a mistake of fact contemplated by section 434": *Reichner v. Blakiston's Son & Co.,* 115 Pa. Superior Ct. 415, 422, 175 A. 872. The 'mistake of fact' contemplated by the act refers to a fact which existed at the time the final receipt was signed, not to a subsequent development from an injury which was thought to be healed, or to claimant's own belief that his disability had ceased, which was later disproved by the subsequent course of events. *Shetina v. Pittsburgh Term. Coal Corp.,* 114 Pa. Superior Ct. 108, 113, 114, 173 A. 727. The 'mistake of fact' sufficient

to justify the setting aside of a final receipt and the reinstatement of the agreement, if referable to the physical condition of the claimant, must not be one relating to changes which have occurred in his physical condition since the receipt was signed. Present disability as a consequence of later developments or physical degeneration resulting from the injury is within the limitation prescribed by the Act of 1927 and must be presented as a cause for reviewing and reinstating the agreement within a year after the last payment of compensation: *Zavatskie v. Phila. & R. C. & I. Co.*, 103 Pa. Superior Ct. 598, 600, 601, 159 A. 79; *Borneman v. H. C. Frick Coke Co.*, 122 Pa. Superior Ct. 391, 395, 396, 186 A. 223. We pointed out in *Shetina v. Pittsburgh Term. Coal Corp.*, 114 Pa. Superior Ct. 108, 113, 173 A. 727, and in the same case in 119 Pa. Superior Ct. 425, 431, 432, 179 A. 776, concrete examples of mistakes of fact which justified the board in setting aside a final receipt and reinstating an agreement or award; but the evidence in this record fails to bring this case within any of them or to present a 'mistake of fact' within the contemplation of section 434.

The evidence of the claimant's physicians, who examined him in September 1937 and November 1937, fails to show any definite injury resulting from the accident, and existing when the compensation agreement was made, which the parties did not know of when the final receipt was signed. Dr. Heberling said (13a) the X-ray shows "an old fracture of the pelvis with some changes in the lumbosacral region. I might say that this fracture is through the right sacroiliac joint and through the ramus of the pelvis and ischium with some displacement of the ilium on the right side, with some injury to the fifth lumbar vertebra in the region of the lumbosacral joint." This is only a slightly more detailed statement of the history given him by the claimant, "that he suffered an injury to the lower back and

pelvis in 1931" (p. 13a) ; and is in exact accord with the briefer description in the compensation agreement, "Fracture 4th lumbar vertebra—right. Fracture of descending ramus, right. Slight separation right sacroiliac joint"—except that the fracture of the lumbar vertebra was stated as the 4th instead of 5th—the latter lending itself better to a fusion with the sacrum. And Dr. Ritter testified (p. 26a) that the X-ray "shows an old fracture of the pelvis through the ramus and through the right sacroiliac joint on right ilium with displacement of the right sacroiliac joint; an old fracture of the fifth lumbar vertebra with displacement backwards to the sacrum"—which does not differ materially from Dr. Heberling, or the diagnosis made when claimant was in the hospital in 1931.

The other conditions now existing, the "deformity" of the spine and pelvis, the "marked hamstring spasms" on the right side, the "displacement of the postero-superior spine", the atrophy of the right leg, and the weakness in the leg due to atrophy from disuse and sciatica, were all secondary and referable to the injury to the back and pelvis, and were developments caused by their use after the injury.

Dr. Heberling testified, when asked how he accounted for the claimant working with his back in the condition described by him, "The only way I can account for that is the fact that the patient was under treatment for a time and the back had improved and he was able to return to work. *Now the effect of the work must have been such that his back was injured again* due to the strain on the bony changes in his back as the result of his original accident" (p. 14a). Dr. Ritter's explanation (pp. 27a and 28a) was along the same line; and the testimony of both physicians makes it clear that the claimant's present total disability is a subsequent development of the original injury resulting from six years of work, caused by a strain on the injured parts

of his back, which in December 1931 had improved sufficiently to permit him to go back to work and earn the same wages he received before the accident—for the claimant testified that during the last six years of work he had always "earned" his wages; and that this disability can be removed by the fusing operation above referred to.

Much as we regret the outcome, we are required to hold that there is no substantial competent evidence that the final receipt was founded on a mistake of fact; that on the contrary, the claimant was able to return to his former work and did work at the same wages he had received prior to the accident for nearly six years and that his present disability is a subsequent development from the original injury caused by a strain, while thus working, on the injured parts of the back; and that it falls within the limitation prescribed in the Act of 1927, and is not now compensable. Any deviation from the law merely to escape a harsh consequence would give rise to many more unfair and unjust consequences and unsettle the law to such an extent that no one could, with any certainty, determine what was a mistake of fact.

See also *Cooper v. Byllesby E. & M. Co.* decision handed down this day.

The judgment is reversed and is now entered in favor of the defendants.