Hamer *v.* West Virginia Pulp and Paper
Company, Appellant.

Argued October 28, 1940.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Richard H. Gilbert,* for appellant.

*Bernard Jubelirer,* for appellee.

OPINION BY HIRT, J., March 1, 1941:

Claimant was injured on November 21, 1934 in the course of his employment with defendant as a brakeman. His head was caught between the corner posts of two moving trucks or cars as they came together while he was uncoupling them on the inside of a curve in the track. He was bleeding from the ears and nose and was taken to the Altoona Hospital where he remained for five days following which he was confined to his home for fourteen weeks. An open agreement was entered into providing for compensation for total disability. All payments under the agreement were terminated as of January 28, 1935 by a final receipt.

Following the final receipt, claimant was given lighter work "sweeping and cleaning up the yard." Before his injury he had earned wages at the rate of $20.90 per week; on returning to work he was paid $19 weekly. Because of increasing physical disability he was obliged to abandon all employment on November 28, 1936. Since that date his employer has volun-

tarily paid him $20 each month. On June 17, 1938 claimant petitioned for a reinstatement of compensation on the ground that the final receipt was executed upon a mistake of fact. At the hearing on that petition the referee, from the testimony, found sufficient ground for setting aside the final receipt. On a further finding that claimant was disabled as a result of the original injury the referee made an award for total disability. The award on successive appeals was affirmed by the board and the lower court, with a deduction of the amount of voluntary payments made by defendant after the final receipt was given.

It is not denied that claimant had an impaired heart at the time of the injury to his head but his health was then apparently normal and he had been able to do the work of a laborer for ten years without interruption. There is no evidence of incapacity prior to the accident. Two years after the injury an examination disclosed an enlargement of the left ventricle with moderate fibrillation and an impaired myocardium. The diagnosis was mitral systolic heart or stenosis with a murmur. As a result of the head injury claimant had diplopia or double vision and facial paralysis and he intermittently suffered severe attacks of head pains. Following the injury he became highly nervous and emotionally unstable; his health began to fail and it is conceded that he is now totally disabled.

The evidence to overthrow a final receipt must be of a more definite and specific nature than is required to support an award of compensation in the first instance. And a claimant's mistaken belief that he has recovered sufficiently to return to work in itself is not sufficient to set aside a final receipt. *Eberst v. Sears Roebuck & Co.,* 334 Pa. 505, 6 A. 2d 577; *Reichner v. Blakiston's Son & Co.,* 115 Pa. Superior Ct. 415, 175 A. 872. There must be evidence of a mistake of fact which existed at the time the receipt was signed. It is claimant's position that the accidental injury to his head so aggra-

vated an existing heart condition that the latter became the cause of his continuing disability and that the fact of a causal connection between the injury and the impairment of the heart was not known to either claimant or defendant when the receipt was signed. If this contention is supported by definite and specific evidence in quantity and quality supplying reasonably satisfactory proof that a mistake of fact existed, the receipt was properly set aside. *Shuler v. Midvalley Coal Co.,* 296 Pa. 503, 146 A. 146; *Shetina v. Pgh. Ter. Coal Corp.,* 114 Pa. Superior Ct. 108, 173 A. 727; *Berkstresser v. Wkm's Ins. Fund,* 140 Pa. Superior Ct. 237, 14 A. 2d 225.

The issue requires a review of the testimony. At the time of the injury claimant was attended by Dr. Bradin, the company physician and later by Dr. Glasgow, a physician of his choice and was treated for his heart condition and for his head pains. Because his general condition grew progressively worse Dr. Glasgow sent him to the State Hospital at Philipsburg for a clinical examination in December 1936. He was there examined by Dr. Richard L. Williams who when called by the defendant testified that an x-ray examination showed a heart which was considerably enlarged with moderate fibrillation. His examination indicated a heart with an impaired muscle, irregular in action and an intermittent pulse. He was informed of the nature and the extent of the head injury but stated: "It is possible but highly improbable that this injury would bring this man into this condition that he was at the time he was in the hospital." When asked: "Would there be any causal connection between the head injury which the patient described to you and the heart condition as you observed it in December 1936?" he replied: "No, in my opinion none at all." Dr. J. D. Findley who attended claimant at the Altoona Hospital immediately following the injury, testified that on examination at that time there was evidence that claimant's heart was

not normal and that it was the type of heart that in the course of time would "give symptoms by the person becoming less capable of strenuous work." In his opinion these conditions were not related to the injury. He further testified: "I cannot say that the man's condition at the present time is due to the injury which he received because his examination showed a definite heart condition which "would continue to get worse." Dr. G. E. Alleman, a roentgenologist called by claimant testified as to his condition as disclosed by an examination and read into the record his report of the x-ray examination of May 1938 as follows: "There is some slight intracranial pressure, a minor feature; a major feature, however, is the increased width of the blood vessels in the brain which denotes a hypertension in this area even though there might not be hypertension in the rest of the body. We think that we can demonstrate a simple benign new bone growth on the posterior margin of the posterior clinoid. We think this case warrants a complete neurological study."

It will be necessary to review the testimony of Dr. Paul Epright somewhat more in detail, for the award must rest upon his testimony if at all. Claimant first consulted him on June 18, 1938. He complained of "terrific head pains" and gave a history of the accident, stating that until injured he had been in normal health and had worked continuously for ten years. This witness said that claimant described the accident and the nature of the injury and his treatment under Dr. Findley while at the Altoona Hospital; that he informed him of having been referred back to Dr. Bradin, the company physician, and of the later appeal to Dr. Glasgow and of his consulting other physicians at Tyrone. The bleeding from both nostrils and from the left ear following the injury indicated to this witness the possibility of severe injury within the cranium or about the skull and he referred claimant for an x-ray examination. When asked: "Dr. Epright, in order to

come to a responsible conclusion as to this man's condition did you in addition to this past history obtain any other reports from other doctors or institutions?" he replied: "Naturally I did. I communicated with Dr. Barns, [a physician at Tyrone] I communicated with Dr. Hogue, [who had made an examination of claimant's eyes] I received a copy of the complete report from the Philipsburg State Hospital and I secured a copy of the chart of his five days when he was in the Altoona Hospital." He further testified: "Q. Doctor, taking into consideration these reports, your examination and investigation did you come to any conclusion as to the condition of the claimant? A. Following the elicitation of the patient's history, a review of the report of the Philipsburg Hospital and Dr. Lynn, [of that hospital] a review of the history and the findings of the Altoona Hospital originally, and particularly the report of Dr. Alleman, *I feel very sure that this injury definitely was the cause of the patient's present disability.*" The only objection to this testimony was that the "reports are of a hearsay nature." As to the heart condition the witness testified: "I believe that the man definitely has a myocarditis, chronic myocarditis. Q. Doctor, the testimony discloses that prior to his accident on November 21, 1934 this man was engaged in work that necessitated great exertion and labor and up to that date was able to perform all his duties without any discomfort, inconvenience or pain, and that he had not been right, according to his statement, since the date of his accident. Even though there was a pre-existing heart condition do you still feel that the cause of his present disability is the injury to his head? A. Absolutely. Q. Doctor, even though this claimant had a pre-existing heart condition would the injuries which the x-rays discloses aggravate that condition? A. *I absolutely believe so.*" This testimony was objected to only because "based upon hearsay testimony as given by *claimant.*" Dr. Epright also stated that in his

opinion claimant would still have been working in 1938 but for this accident.

Following this testimony, Dr. Ben Hull of Altoona was called by the referee as an impartial expert. He, after reading all of the previous testimony and, following an examination of claimant in February 1939, testified that he found an enlarged heart but no evidence of cardiac decompensation. He testified that claimant was totally disabled and that his disability was due to his cardiac condition. He did not have the benefit of the x-ray examination but testified to the severity of the head injury as evidenced by the facial paralysis. In his opinion there had been a fracture. When asked: "Doctor, were you able to connect, in any way, either directly or indirectly, this head injury with the present condition you find Mr. Hamer in?" he said: "The facial paralysis and the emotional nervous condition, I think are unquestionably the direct result of the head injury. How much connection that would have with the heart condition, *I can't say.*" And further: "Q. Were you able to eliminate the head injury entirely from the picture, Doctor, as a causative factor in producing the heart condition? A. No sir, *I couldn't eliminate it.*"

The compensation authorities are the triers of the facts and the validity of the finding of a causal connection between the accident and claimant's present disability is not affected by the fact that only one medical expert testified positively to that effect or that two well qualified physicians expressed an opinion that there was no causal connection and the impartial expert was unable to say. *Jones v. United Iron & Metal Co.,* 99 Pa. Superior Ct. 394. Our only function is to decide the question of law whether there is definite and specific evidence that the pre-existing heart ailment or disease was aggravated to such an extent that the aggravation became the independent cause of the disability as distinguished from that attributable to the

natural progress of the disease. *Bittner v. Saltlick Township*, 109 Pa. Superior Ct. 406, 167 A. 483.

The testimony must be considered in the light of the general principle that if the evidence is relevant and competent the compensation law contemplates liberality in the proofs and the inferences reasonably to be drawn therefrom. *McCauley v. Imperial W. Co.*, 261 Pa. 312, 104 A. 617. The objection to Dr. Epright's testimony was not that he did not state all the facts which, as a basis for his opinion, he assumed to be true, but that his conclusions were inadmissible because based upon a history of the case obtained from claimant and from other sources which as substantive evidence would have been objectionable as hearsay. The objection, however, is not valid as applied to the testimony of this expert witness for the assumed facts properly might have been incorporated into a hypothetical question. See *Kelly v. Watson Coal Co.*, 272 Pa. 39, 115 A. 885; *Knisely v. Knisely*, 120 Pa. Superior Ct. 140, 182 A. 51; *Harmon v. Knoll*, 129 Pa. Superior Ct. 390, 195 A. 448. That they were not in this case, in our opinion, is not fatal to the award for the reason that there was no question as to the nature or extent of the original injury nor the condition of claimant's heart and the resulting disability. There was no controversy except as to the inferences to be drawn from facts not in dispute. Dr. Epright, in unequivocal language stated that in his professional opinion the disability was traceable to the accident and resulted from the heart condition as aggravated by the head injury. This is substantial competent testimony meeting the standard of *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995. His testimony was direct and positive and was sufficient to warrant setting aside the final receipt and to sustain an award of compensation for total disability.

Judgment affirmed.